Trephagen v. City of South Omaha.

GEORGIA A. TREPHAGEN ET AL., APPELLEES, V. CITY OF
SOUTH OMAHA, APPELLANT.

FILED JULY 3, 1903.   No. 12,988.

1. **Corporation:** AUTHORITY OF GENERAL MANAGER. The authority of a
general manager to conduct the ordinary business of a corpora-
tion, organized for the purpose of yarding, feeding and taking care
of cattle, hogs, sheep and horses consigned for sale to a certain
market, is not broad enough to authorize him to sign a petition
for paving a city street and thus charge the real estate of the
corporation, abutting thereon, with the cost of such improvement.

2. ———: BOARD OF DIRECTORS. The act of signing the name of the
corporation to such a petition is one which falls within the man-
aging powers of the board of directors, who are, by law and by
its articles of incorporation, made its managing agents.

3. **Municipal Corporation:** STREET IMPROVEMENTS: BURDEN OF PROOF.
The authority to perform such an act must come from the board
of directors; and the burden is upon the city which seeks to en-
force a special tax against specific lots to pay for such improve-
ment, to show that the general manager was duly authorized by
the corporation to sign such petition for and on its behalf.

4. ———: SPECIAL ASSESSMENT: NOTICE. Under the statutes in force
in the year 1898, no special tax could be assessed upon and made
a charge against specific real estate in a city of the first class, to
pay for the construction of a wooden sidewalk, without the adop-
tion of a resolution fixing the cost of such construction, as a
special assessment thereon, at a meeting of the city council of
which, at least, ten days' notice had been given before holding
the same, or personal service of notice thereof on the persons
owning or occupying the property to be assessed.

5. ———: ———. At that time, cities of the first class had no power
to levy a special tax on specific lots, for the purpose of paying
the cost of removing garbage therefrom.

APPEAL from the district court for Douglas county:
CHARLES T. DICKINSON, DISTRICT JUDGE. *Affirmed.*

*A. H. Murdock,* for appellant.

*Henry W. Pennock, contra.*

BARNES, C.

Georgia A. Trephagen, H. L. Wilton, Mike Higgins and
Kornelia Adamowicz, appellees, commenced this action in

40

the district court for Douglas county, to restrain the treasurer of the city of South Omaha from collecting certain special taxes or assessments levied against and upon certain lots belonging to them, situated in said city; to cancel the said special taxes and remove the cloud, created by the assessment and levy thereof, on their title to said lots. The petition alleged, in substance:

That the city had pretended to assess certain special taxes against their specific property for paving, curbing and guttering that part of "L" street from the west end of the viaduct to the west line of 33d street, situated in paving district No. 6 of said city; that prior to the attempted passage and approval of the ordinance ordering said paving, there had never been filed with the clerk of said city, or presented to the city council, a petition signed by the property owners representing a majority of the front feet or area within the limits of said paving district, as defined in said ordinance; that a paper called a petition was filed with the said clerk requesting that the street be paved with Colorado sandstone on six inches of sand; that the said paper was not a petition, but was a mere selection of materials, and was not signed by the owners of a majority of either the front feet or area of the real estate within said district; that there appears upon said paper the name of Joseph Schlitz Brewing Company, Ed. Ainscow and R. D. Mattice, but neither of said parties owned any real estate within said district at the date thereof, nor at the time defendant passed the ordinance ordering the said street to be paved; that there also appears upon said paper the name of the Union Stock Yards Company, by W. N. Babcock, G. M.; and it was alleged in the petition that said Babcock had no authority to sign the name of the Union Stock Yards Company, and the same was placed upon said paper without the authority of the said corporation, and should not be considered as a lawful signature; that no other paper purporting to be signed by property owners in said district was ever filed with the clerk, or with the city council in connection with the pav-

ing or curbing of said street, and no other proceedings were had than those mentioned in the petition, in connection with the paving of said street, and the assessment of the cost thereof on the adjacent and abutting property; that the city council failed to sit as a board of equalization, and failed to assess benefits to the property of the plaintiffs, and failed to make any finding of any character respecting said assessment, and failed to give notice of said proposed equalization by publication for six days prior to said 7th day of January, 1892, in any daily paper of said city; that by the terms of a certain special ordinance, No. 32, large amounts of special taxes were levied upon the real estate of the appellees to pay the costs of said paving and curbing, and the said ordinance was duly certified by the city clerk to the city treasurer, and was by him entered upon the tax lists and became and is an apparent charge and lien upon the plaintiffs' real estate, but the said assessments were null and void for the reasons above set forth.

For their second cause of action, appellees alleged:

That the city attempted to pass a special ordinance numbered 134 by the terms of which lot 7, block 357, was charged and assessed with the sum of $35.53 for the costs of the construction of an alleged sidewalk in front of said property; that, prior to the passage of said ordinance, no notice had been given to the owners of said property, and no notice had been published of said proposed assessment; that the owners had never been required to construct the sidewalk or notified that a sidewalk had been ordered, and had never been given any opportunity to construct the same, and that all of the proceedings of said city council with reference thereto were null and void.

For their third cause of action the appellees alleged:

That the city attempted to pass, and, thereafter, there was approved by the mayor of said city, a special ordinance, No. 87, by the terms of which lot 7, block 357, was charged and assessed with the sum of $19.64, as an alleged garbage assessment, for removing garbage from said prop-

erty; that said property was not subject to an assessment for removing garbage; that there was and is no authority of law for assessing specific real estate in said city for the removal of garbage, and all of the acts of the city council in attempting to levy and in levying an assessment therefor were and are null and void. The petition concluded with a suitable prayer for relief.

The appellant, by its answer, denied each and every allegation contained in the petition, except those expressly admitted; set up a plea of the statute of limitations; and, for a third defense, contained matters supposed to create an equitable estoppel. The reply was a general denial. The cause was duly tried, and the court found generally in favor of the appellees and rendered a decree canceling the alleged special taxes, restraining the collection thereof and removing the apparent cloud from the title to the lots described in the petition. From this decree the city appealed, and now contends that the court erred in its findings and judgment as to each of the several causes of action set forth in the petition, and that the evidence is not sufficient to sustain the decree.

The rule is, that in order to confer jurisdiction upon a city council to order paving and curbing, and authorize the assessment of the cost thereof against the abutting real estate, a petition therefor must be presented, signed by the owners of a majority of the feet frontage upon the street to be thus improved; and this rule is so well settled in this state that it is unnecessary to cite authorities in support of it. In fact, the appellant concedes this to be the rule. It may be further said that the burden is on the city seeking to enforce such a tax to show that all the proceedings made essential by the statute—which is the city charter—leading up to the special assessment, have been strictly followed; that there is no presumption coming to the aid of the city which seeks to enforce the lien of a special tax. *Merrill v. Shields,* 57 Neb. 78; *Smith v. City of Omaha,* 49 Neb. 883.

It is a recognized rule of construction, especially ap-

plicable to actions of this character, that those things which the law regards as the substance of the proceedings can not be treated by the courts as immaterial; that the record must show, affirmatively, a compliance with all the conditions essential to a valid exercise of the taxing power, and that their omission will not be supplied by presumption. It therefore devolved upon the appellant in this case to show that the special taxes complained of were legally levied.

It was stipulated, by the parties on the trial in the court below, that the property owned by the Union Stock Yards Company constituted a majority of the feet frontage abutting on the street paved, consequently the validity of the petition turns upon the purported signature of that corporation thereto. Evidence was introduced by the appellant which showed that the Union Stock Yards Company was a corporation organized for the purpose of conducting a general stock yards business; that the business of said corporation was the yarding, feeding and taking care of cattle, hogs, sheep and horses that were consigned for sale to the South Omaha market. It was further made to appear that W. N. Babcock, who signed the name of the company to the paper or petition in question, was at that time its general manager. The appellant, recognizing the fact that it devolved upon it to prove that Babcock had authority to sign the petition, introduced in evidence certain parts of the articles of incorporation under which the Union Stock Yards Company was organized, which we quote as follows:

"The affairs of this corporation shall be conducted by a board of directors of seven members, each of whom shall hold office for one year, and until his successor is elected and takes his seat at the board; they shall elect a president, vice-president, secretary and treasurer; they shall also appoint such superintendents, managers and agents as, from time to time, shall be deemed necessary for the transaction of the business of this corporation. The board of directors, at their regular meeting after each annual

election, shall elect by ballot a president, vice-president, and may also elect a secretary and treasurer, and may continue the then incumbent in office by resolution. The board of directors shall have the whole charge and management of the property and effects of the company, and they may delegate the power to the executive committee to do any and all acts which the board is authorized to do, except such acts as by law, or by these by-laws, must be done by the board itself. The board shall have the power, in the absence of the president and vice-president, to appoint a chairman *pro tempore,* and, during the prolonged absence of the president or other officers, to appoint substitutes *pro tempore.* The board of directors shall prescribe the duties and powers of the secretary and treasurer, and all subordinate officers and agents, and shall make all needful rules and regulations not inconsistent with the articles of incorporation for the transfer of stock of the company, the issuing of certificates of stock, keeping the records and accounts of the company, the management and disposition in particular of the stock, property, estate and effects of the company, and shall have power to delegate authority to do and perform specific acts not inconsistent with the articles of incorporation to special committees to be appointed by the board or presiding officer, at the option of the board."

It can not be said that these provisions authorized Babcock, as general manager of the corporation, to sign the paper or petition in question. No evidence was introduced to show, or which tended to show, that the board of directors had ever authorized him to do so. We can not presume that Babcock had power to sign the petition and thereby bind the corporation. It is true that a corporation can act only by its agents, and the presumption is that an act pertaining to its ordinary business, when performed by its president, secretary or general manager, is legally done and is binding upon the corporation, yet no such presumption prevails, when the act done by such officers does not fall within the scope of the powers con-

ferred upon and usually exercised by them as part of the ordinary business of the corporation. The act of signing the name of a corporation to a petition for the opening of a highway over its real property, or the paving of a street abutting thereon, whereby a special tax will be assessed and become a charge against the property of the corporation, is one which falls within the managing powers of the board of directors, who are by law, and by the articles of incorporation in this case, made the managing agents of the corporation; and authority to perform such an act must come from them. The appellant having failed to introduce any evidence tending to show that Babcock was authorized to sign the paper in question, by the board of directors of the Stock Yards Company, it follows that the petition or paper was void, and conferred no authority upon the city council to pave the street and assess the cost thereof against the abutting real estate. *Morse v. City of Omaha,* 67 Neb. 426; *Orr v. City of Omaha,* 2 Neb. (Unof.) 771; *Mulligan v. Smith,* 59 Cal. 206.

On the question of the equalization of the assessment for paving and curbing, it appears from the records of the city council, which are in evidence, that Friday, January 7, 1892, was the time fixed for that purpose; no meeting was held on that day, but it appears that at a meeting held on January 11, following, it was moved that the council sit as a board of equalization, on January 22 and 23, 1892, and the motion was carried. It further appears that, at the meeting of January 22, a recess was immediately taken until January 23, at 4 o'clock P. M., and the city clerk was instructed to receive all complaints in writing; that on the 23d the meeting was called to order and, on a motion made by one of the councilmen, an adjournment was taken to January 25, 1892; that the adjourned meeting, so far as the record shows, was never held, and therefore the court was right in its finding that no equalization of this paving assessment had ever been made, and that the city council never held a proper meeting for that purpose.

We therefore conclude that the finding and judgment of

the trial court as to the paving, curbing and guttering tax must be affirmed.

As to the sidewalk assessment; it appears that no legal notice of the meeting of the board of equalization to make such assessment was ever given or published. The affidavit made by the publisher of the *Daily Tribune,* the newspaper in which publication was attempted, showed that the notice of the proposed meeting for that purpose was published from October 13 to October 19, 1898; and it appears that no other notice was ever published or given to the appellees. The statute in force, at that time, relating to the construction of wooden sidewalks, required that the assessment to pay the cost thereof, should be made by the city council, at any meeting, by a resolution, fixing the cost of the construction or repairs of such work along the lots adjacent thereto as a special assessment thereon, and the amount charged against the same which, with the vote thereon by yeas and nays, was required to be spread at large upon the minutes; it was provided that notice of the time of holding such meeting and the purpose for which it was to be held, should be published in some newspaper published and of general circulation in the city, at least ten days before holding the same; or, in lieu thereof, personal service might have been made on the persons owning or occupying the property to be assessed. The appellant failed to show that personal service was ever made on the appellees, and it appearing that the notice in question was published only six days instead of ten, it follows that there was no such substantial compliance with the statute as would authorize the city to levy the special tax, for the construction of the sidewalk, complained of, and make it a specific charge on the abutting real estate.

It further appears that by special ordinance, No. 87, the appellant levied a special tax amounting to $11.10 on lot 7, block 357, South Omaha, for the purpose of paying for the cost of removing garbage therefrom. The petition charges that there was no authority of law for this special

assessment. The trial court found for the plaintiffs, and declared this tax void. We have been unable to find any statute under which the city of South Omaha, at that time, might have levied such an assessment. It is one of the elementary principles of taxation that the power to tax lies exclusively in the legislature. Without a special legislative enactment, no city, or other municipal subdivision, has any right to levy a tax or assessment upon the property of its citizens. Cooley, Taxation (2d ed.), 62, 142.

The statute not having conferred authority on the city, authorizing it to assess and levy a special garbage tax, and make it a specific charge on the lot in question, we conclude that such tax was void. The foregoing questions being the only ones argued by counsel for the appellant in his brief, no others will be considered. A careful review of the record convinces us that the findings and judgment of the trial court are amply sustained by the evidence and accord with well established principles of law. We therefore recommend that the judgment appealed from be affirmed.

ALBERT and GLANVILLE, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.