GEORGE A. FISHER, APPELLANT, V. NATIONAL MORTGAGE LOAN COMPANY ET AL., APPELLEES.

271 N. W. 433

FILED FEBRUARY 11, 1937. No. 29728.

*Stewart, Stewart & Whitworth, Bernard S. Gradwohl* and *Charles B. Paine,* for appellant.

*Peterson & Devoe, Meredith K. Nelson* and *E. S. Nickerson, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

Appellant, George A. Fisher, brought this action in equity as a stockholder in the National Mortgage Loan Company, a corporation, upon behalf of himself and all other stockholders similarly situated, against said corporation and John C. Hartigan, Albert F. Ackerman, Frank Simodynes, Otto H. Brockman, William Mueller and P. A. Bindernagle, its directors. In his petition he alleged in substance that the plaintiff for many years had been the owner of 400 shares of stock in said corporation; that the defendants John C. Hartigan and Albert. F. Ackerman have been, for more than 10 years last past, president and secretary, respectively, and managing officers of said corporation; that said defendants Hartigan and Ackerman for many years last past have grossly mismanaged the business of the corporation and have wrongfully and fraudulently disposed of

its property and assets; that defendant Hartigan has at all times been an attorney and devoted only a very small portion of his time to the business of the corporation, but caused the corporation to pay him an exhorbitant salary of several hundred dollars a month for over 10 years; that the company has not been in active business for many years, and its management only required a small portion of defendant Ackerman's time as secretary, and that he was paid an exhorbitant salary for over 10 years last past; that the stockholders of the company voted to liquidate the business of the company in April, 1930, and that said officers and directors have not complied with the stockholders' vote; that on or about January 2, 1934, defendant Hartigan as such president and attorney of the corporation, and with approval of defendant Ackerman, wrongfully and unlawfully and without right or authority, took from the assets of the corporation and converted to his own use $10,000 in United States government bonds and $20,000 in Lincoln Joint Stock Land Bank bonds of the par value of $20,000, and wrongfully claimed he was entitled to said bonds for services rendered said corporation; that on April 16, 1934, plaintiff caused a written demand to be made on the defendant Hartigan to return said bonds to the defendant company and at the same time caused a written demand on each and all of the directors of the company to require defendant Hartigan to return said bonds to the corporation, but the defendants and each of them have failed to comply with the demand; that said directors and officers have held no directors' meeting for more than four years and said directors have wrongfully and negligently permitted the aforesaid mismanagement of the defendant company by its officers; that the assets of the company are largely real estate of value of about 75 to 100 thousand dollars; that plaintiff has no adequate remedy at law. Plaintiff prayed that the defendant Hartigan be required to return said bonds or the proceeds thereof to said corporation; that defendants Hartigan and Ackerman be required to account to the company for mismanagement and

for excessive salaries; that a trust company be appointed to liquidate the assets of the company and that the defendant company be required to pay the plaintiff a reasonable attorney's fee and costs of the action and for general equitable relief.

The joint answer of the president, secretary, the corporation, and all directors save one, admitted that the company was a corporation; that the parties named as directors were such; that liquidation was voted in 1930, but owing to adverse conditions it could not be carried out without sacrifice, and that the same will be completed when in the judgment of the board of directors the same can be done without unnecessary loss; that the plaintiff does not bring this action in good faith, but on behalf of a judgment creditor of said corporation named Baxter to assist said creditor in the collection of an unsuperseded judgment in the sum of $72,000, and denied the other allegations of the petition.

The defendant Mueller answered and alleged substantially the same facts as the other defendants, except the allegations as to the details of the work of liquidation of the company, which allegations he denied.

On March 12, 1935, the defendant Hartigan filed a separate and amended answer in which, in addition to the allegations of his original answer, he alleged that for many years last past he had been attorney for said corporation and its predecessor and had represented it in matters connected with its business, and that for the last 13 years continuously until the present time has acted as legal adviser of the defendant corporation and has conducted the defense of many cases in Nebraska and Colorado and that one case was then pending in the supreme court of Nebraska; that he employed attorneys for said case in the supreme court, the judgment in which was not superseded, and for the purpose of securing payment to his attorneys in said case in the supreme court and himself of attorneys' fees earned and to be earned in the trial and in the ultimate disposition of said cause, and for the purpose of

procuring payment to himself of attorney's fees which he had theretofore earned for legal services rendered to said company as above set out and for money expended by him in the preparation and trial of said case and his expenses while so employed as attorney, there was turned over to him by defendant corporation for said purposes the bonds belonging to said corporation in the value of $24,800; that the reasonable value of the services rendered by the defendant and his said attorneys exceeds $30,000; that from the proceeds of said bonds he had paid out $500 to his said attorneys, on attorneys' fees, $1,200 in preparing said case in the supreme court, $250 in preparing the appeal of said case, and $3,000 to the company for operating expenses of its business, $3,500 in cash as security for appeal bond, and $4,000 to himself for salary.

For reply plaintiff filed a general denial, also alleging payment for all of the past services of the defendant Hartigan; and the statute of limitations was pleaded as to said claims and that the defendant Hartigan was estopped to claim that he took said bonds as security. The defendant Mueller filed a reply in the nature of a general denial, but alleging that defendant Hartigan was not to collect for any legal services other than his salary as president, and also pleaded the statute of limitations.

There is not much dispute in the evidence as to the principal facts. The record is quite voluminous.

On the facts material to this appeal, the plaintiff, Fisher, testified that he was a farmer living near Malcolm, Nebraska, and owned 400 shares of stock in the corporation acquired in 1917; that he paid $10,000 for this stock; that it was determined by the stockholders in 1930 that the assets of the corporation were to be liquidated as rapidly as possible; that he had called at the office of the corporation many times since liquidation was voted and it was closed and locked even during the middle of the day; that after he had signed the agreement to bring this suit the secretary told him that Baxter had a judgment against the corporation, and that was the first he knew about it and

the first he knew that his present attorneys represented Baxter; that he went to see his present attorneys about bringing this suit at the suggestion of another, and that he signed an agreement that he would not be liable for attorneys' fees and providing his attorneys would receive the fees allowed by the court. This agreement was in evidence, but did not provide whether or not the plaintiff was to pay costs. Plaintiff further testified that he had talked to several stockholders about bringing the suit and that he had tried to get stockholders' and directors' meetings several times without avail during the last four years. On rebuttal plaintiff was not permitted to testify as to his motives in bringing the suit. Plaintiff further testified that he attempted at various times to get a financial statement of the company from the secretary but could not secure any and had not received any such statements for four years; that the secretary had stated directors' and stockholders' meetings were not necessary.

The defendant Ackerman, secretary of the corporation, testified in part that at the time the defendant Hartigan, president of the corporation, took the $10,000 in Liberty bonds, the president told him he was taking the bonds as security for payment of fees owed him in the past for expenses and services to the company and to secure him and the attorneys he was employing in the Baxter case; that he had charged off the books of the company the Joint Stock Land Bank bonds of the par value of $20,000 as a loss, but did so under a misunderstanding as to the president's directions; that he understood the president held the bonds as security for claims; that he as secretary devoted all his time to the affairs of the company and that he had been secretary since 1925; that since 1925 the corporation had been in no active business other than the collection of rents from its various properties and income from stocks and bonds that it held; that the assets of the corporation are now comprised entirely of real estate, being principally farms; that the president of the corporation got the Liberty bonds and the Joint Stock Land Bank bonds

by taking them out of the company's safety deposit box at the trust company in Lincoln, and that he and the president each had a key to said box; that he did not know until later that the bonds were gone; that no assignment was given to the president nor was there any bill of sale or transfer that he knew about; that the president gave him $2,100 in December, 1934, and $900 in February, 1935, as salary, and that the total of these two amounts was still carried on the books of the company as a liability from the company to the president; that all the farms of the corporation are leased and the company has local agents to look after them and pays them separately; that the company has not sent out annual statements to the stockholders since 1930.

President Hartigan testified in part that he became connected with the corporation in 1922 and has been director since that time; that he became president in 1923 and drew $300 a month until 1924 as salary and expenses, and from 1924 to 1925 he drew $250 a month, and since that time he drew $200 a month; that the work had taken all of his time, and during the last two years he probably had devoted about a quarter of his time during that time to the corporation; that he withheld the land from the market and delayed ultimate liquidation of the company until it could be sold without sacrifice, and that as real estate values had gone down there was no possibility of turning the same without a loss; that he handled cases during 1923 to 1926 for the company. Evidence was then admitted by the court over objection relating to the labor of the president on many cases for the purpose of showing the motive of the president. The president further stated that he took the bonds from the safety deposit box and that he sold the United States bonds at par and the Joint Stock Land Bank bonds at 73, making a total of $24,800; that he advanced $3,000 to the secretary as salary and expenses; that he had deposited $3,500 with a surety company in connection with a bond in the Baxter case, which would be returned; that he paid himself $4,000 salary; that he had paid out other

amounts for attorneys' fees and expenses in connection with the Baxter litigation; that he bought land in Kansas with $15,000 of the proceeds from the bonds and took title in his own name; that he did not take up with the directors about taking the bonds before taking them; that there had been no stockholders' meeting for five years; that he had made no disclosures to the stockholders for five years nor had a directors' meeting for five years; nor had any statement been sent to the stockholders for about five years; that he had no agreement with the company as to any lien; that nothing was taken up with the board of directors and no agreement of any kind was made with them, and that he did not take up with any one connected with the company the use of the bonds respecting his claim.

The president further testified that the declaration of trust as to the Kansas land was executed March 12, 1935, after trial had commenced; that about $5,250 of his claim was for a lien based on services rendered in previously handled cases; that the grounds of his claim were for services rendered by himself and his attorneys in the Baxter litigation; that there had been no agreement for fees in this litigation, but that in his opinion the fee should be $5,000 for himself and $5,000 for his attorneys in the event he won the Baxter case, and otherwise $3,000 each; that he had never rendered the company a statement for his services nor were such items shown on the books of the company; that his principal business with the company was advice and opinion; that he had also paid his own traveling expenses out of the proceeds of the sale of said bonds; that he took said bonds to protect the assets of the company so that they would not be reached by the Baxter judgment and so that he could pay his attorneys and reimburse himself; that he had no thought of getting it for himself and that he expected to submit it to the stockholders before final determination.

The decree of the district court, omitting the formal parts, is: "All claims of Hartigan and others for attorneys' fees and expenses for and in behalf of the National Mort-

gage Company being question not involved in this action should be first submitted by the directors or stockholders. The reversal of the judgment by the supreme court in the Baxter case removes all doubt of the solvency of the company, and this court, in this action, is without authority to appoint either a receiver or trustee for said company. As to the land in Kansas, title to which defendant Hartigan took in his own name, is in fact, in Hartigan's declaration, held in trust for the benefit of the mortgage company, and to which Hartigan has filed a declaration of such trust in the county in which the same is located, makes it unnecessary for this court to enter any order therefor. Wherefore, the court finds generally in favor of the defendants and against the plaintiff, and the petition is dismissed at plaintiff's costs."

The appellant contends that there should be judgment in favor of the corporation in the sum of $24,800 for said bonds converted; that an officer may not without specific authority divert his corporation's property to the payment or securing of a debt to himself; that a finding against appellee cannot be reviewed in the absence of a cross-appeal; that a judgment must be entered in favor of the plaintiff where the figures of the defendant show liability; that after the institution of a suit, when the defendant concedes a portion of the relief demanded and changes his position, such fact does not prevent the court but requires the entry of a judgment in favor of the plaintiff; that judgment should be entered against the defendant's president and secretary for the excessive salaries taken by them while refusing to carry out the mandate of the stockholders to liquidate the corporation; that the court should appoint an agent under directions of the court to carry out the liquidation voted by the stockholders.

This case is principally the application of corporation law to the facts in evidence therein. An officer or director of a corporation occupies a fiduciary relation towards the corporation and its stockholders. *Howell v. Poff,* 122 Neb. 793, 241 N. W. 548; *Bodie v. Robertson,* 113 Neb. 408, 203

N. W. 590; *Miller v. Brown,* 1 Neb. (Unof.) 754, 95 N. W. 797; *Lowe v. Copeland,* 125 Cal. App. 315, 13 Pac. (2d) 522.

An officer or director of a corporation is not permitted without authority to divert corporation property to the payment of or securing a debt to himself. *Howell v. Poff, supra; Camden Land Co. v. Lewis,* 101 Me. 78, 63 Atl. 523; *Security Bank v. Kingsland,* 5 N. Dak. 263, 65 N. W. 697; *Haywood v. Lincoln Lumber Co.,* 64 Wis. 639, 26 N. W. 184; 7 R. C. L. 479, sec. 461.

In the *Haywood* case the rule is thus stated: "Directors, officers, and agents, and other like trustees, cannot mortgage or convey to themselves any more than one can contract with himself. The idea that the same persons constitute different identities of themselves by being called directors or officers of a corporation, so that, as directors or officers, they can convey or mortgage to or consent with themselves as private persons, is in violation of common sense. *In re Taylor Orphan Asylum,* 36 Wis. 534, 552, and cases above cited. See 1 Perry on Trusts, sec. 207, and Morawetz on Priv. Corp., sec. 245; *Walworth County Bank v. Farmers L. & T. Co.,* 16 Wis. *629; *Cumberland C. & I. Co. v. Sherman,* 30 Barb. (N. Y.) 553."

In the instant case, it is not a question of the justness or validity of the claims of the president. It is the law, as stated by the authorities, that an officer or director of a corporation cannot take the property of the corporation into his own hands to pay or secure a debt due himself from the corporation without authorization from the proper corporate authority.

A lien on the property of the defendant corporation could only be fixed by agreement between the corporation and the president as claimant of the lien, or by some fixed rule of law. *Perry v. Neel,* 126 Neb. 106, 252 N. W. 812; *General Motors Acceptance Corporation v. Sutherland,* 122 Neb. 720, 241 N. W. 281; 17 R. C. L. 597, sec. 3.

It is also well established by all modern authorities that one cannot acquire a lien on property of another or of a

corporation as a consequence of his own breach of duty. 37 C. J. 313, and cases cited.

There is no cross-appeal by appellees. It is a well-recognized rule of law in this state that a finding against an appellee will not be considered in the absence of a cross-appeal. *Western Brick & Supply Co. v. Mid-West Construction Co.*, 101 Neb. 254, 162 N. W. 635; *In re Estate of House,* 129 Neb. 838, 263 N. W. 389. In the instant case the trial court stated in the decree that all claims for attorneys' fees and other expenses should be submitted to the directors or stockholders.

After the institution of this suit and apparently on the first day of the trial the defendant Hartigan executed a declaration of trust which provided that defendant Hartigan held the real estate in trust for the defendant corporation, but said real estate was subject to a lien for payment of attorneys' fees to himself and others. This deed of trust is mentioned in the decree of the district court, and its execution and delivery is a concession of a portion of the relief demanded by plaintiff. Such a declaration of trust did not prevent judgment for plaintiff. No action was ever taken by the corporation creating such a lien and its president had no authority to summarily take assets of the corporation and invest them in real estate to secure a lien of himself or others. Also the corporation had a right to direct in what assets its funds should be invested; not an officer and director of the corporation without its authority.

The supreme court of New Jersey in the case of *Fougeray v. Cord,* 50 N. J. Eq. 185, 24 Atl. 499, states this proposition well. The defendants, corporate officers, took certain assets of the corporation in payment of a claimed indebtedness of the corporation to themselves. The court said: "It seems to me that it would be a reproach to the administration of justice to doubt the power and duty of the court in such a case. It is similar to that of a trustee who holds certificates of stock in his name as trustee lodged in a strong box belonging to the trust estate, and then deliberately has

them transferred to his individual name, and the certificates lodged in his individual private strong box, and, when called to account for his breach of trust, retransfers the certificate to his name as trustee and lodges the new certificates in the strong box belonging to the estate, and then coolly says to the court that 'the breach of trust is made good; nothing is lost, and I am entitled to retain the key of the strong box and to have the certificate of stock continue to stand in my name as trustee:' It is well settled that the officers of a corporation occupy towards its stockholders the relation of trustee and *cestui que trust,* and on that broad ground are liable to be called upon to account for their conduct in this court. Morawetz, Corp., sec. 381; Cook, Stock, sec. 648. But if this ground is not, strictly speaking, true, I agree with Mr. Cook that reliance may well be placed upon the broad principle laid down by Lord Hardwicke, one hundred and fifty years ago, in *Sir Robert Sutton's Case,* a case similar to the one now before the court, reported in 2 Atk. 400. At p. 406 he says: 'The tribunals in this Kingdom are wisely formed both of courts of law and equity, and so are the tribunals of most other nations, and for this reason there can be no injury but there must be a remedy in all or some of them, and therefore I will never determine that frauds of this kind are out of the reach of courts of law or equity, for an intolerable grievance would follow from such a determination.' "

When directors serve as officers of a corporation they are liable for return of their salaries in excess of reasonable compensation. But in the instant case the stockholders voted to liquidate the corporation and no change was made or suggested in the salaries of the president or secretary, and it is presumed that such salaries were not unreasonable. At least there is not sufficient showing that such salaries were unreasonable.

A receiver may be appointed for a solvent corporation where there is gross mismanagement or other situation calling for equitable relief. *Howell v. Poff, supra.* The defendant Hartigan and his attorneys undoubtedly did good serv-

ice in defending the Baxter suit. Still the corporation is solvent and all claims should be presented to the corporation for consideration and allowance. We think the facts in the record before us hardly justify the appointment of a liquidating agent or receiver. The defendant Hartigan, as president of the corporation, was undoubtedly under a great burden at the time of the Baxter judgment and suit against the company. Since that case has been disposed of favorably to the defendant corporation, the corporation and directors should have an opportunity to fairly and legally liquidate the company, or at least attempt to do so, until otherwise ordered by proper corporate or other authority. The returning to the corporation, as ordered by this court, of the proceeds from the assets so taken by the defendant Hartigan, leaves all ordinary business and *intra vires* matters of the corporation up to future action by the corporation.

Appellees admit in their brief in the main practically all of these legal propositions, but they seriously contend that they are not applicable in the instant case; that a court of equity should not grant relief to the plaintiff in a stockholders' suit, unless the plaintiff is in good faith the person urging the suit and brings the action in good faith to protect the interest of all the stockholders and the corporation. The appellees contend that the plaintiff was acting in the interest of Baxter in the collection of the judgment; that when the plaintiff signed an agreement that he was not to pay any attorneys' fees, coupled with the fact that the costs had not been paid, it indicated that he was not the real party in interest. Appellees further contend that, were it not for the insistence of courts on such good faith, the privilege of bringing stockholders' suits would be subject to grave abuse, and that which was intended as an instrument of justice would become an instrument of ruthless competition by which parties would crush their weaker competitors; that this rule has been carried so far that a stockholder will not be permitted to bring such suit unless he bears the risk of litigation. Many authorities are cited to these propositions.

We think plaintiff does not come within this rule. He owned 400 shares of stock in the corporation for which he had paid $10,000 and was vitally interested in the conduct of the corporation. When he employed his attorneys in this suit he did not know of the Baxter judgment, nor that his present attorneys had represented Baxter in that suit. He had made many trips to the office of the corporation to get information and quite often found no one there and had sought to get statements of the business of the corporation, and the secretary of the corporation told him that meetings of the stockholders and directors were not necessary. In fact, he had had no success in getting any information as to the business of the corporation. The most that can be said was that he made an agreement whereby his present attorneys were to receive any allowance made by the court for attorneys' fees in this action and that he should not be personally liable for the same. No agreement was made that he should not pay costs. Plaintiff attempted to testify in rebuttal as to his purpose in bringing this suit, but this testimony was excluded on the objection of defendants.

The appellees also maintain that the judgment of the district court should be sustained because a stockholder is not entitled to bring a representative suit on behalf of the corporation and all the stockholders until he has made a reasonable effort to get action by the stockholders as a body, unless he shows such effort would be futile. They claim that when the plaintiff proved he had made demand upon the board of directors for action to secure the return of the aforesaid bonds, and that the directors refused or neglected to do so, such demand and refusal was not enough, and that plaintiff should have made a showing that he had made an effort to obtain a meeting and action by the stockholders as a body for the return of such bonds; also, that the plaintiff did not allege or show any reason why such effort on his part to get a stockholders' meeting would be futile and that there is no allegation that the defendants controlled a majority of the stock of the corporation. Ap-

pellees also cite many authorities to this proposition. The cases seem to hold that there must be a demand that the stockholders as a body sue the directors before an individual stockholder may sue for himself or others so situated for the benefit of the corporation. There is one exception to this general rule, i. e., unless such request, for any reason, would be useless or unavailing. This exception seems to be recognized in most every case cited. The theory of the rule, and the exception, seems to be that the individual stockholder must exhaust all means of redress within the corporation itself before bringing such an action. Some examples wherein such a demand for action by the body of the stockholders is not necessary are where it is made clear that such demand would meet refusal, or that the litigation following would naturally be under control of persons opposed to success, or where the governing body is the wrong-doer, or where the appeal to the stockholders would be unavailing for want of time or for lack of authority to act or other cause, or where the corporation has gone out of existence. In the instant case there had been no directors' meeting for about five years and the president and secretary of the corporation had been its managers during said time. There had been no stockholders' meeting for several years and the plaintiff could not get information as to the condition of the company. He could not secure a financial report of the company and was informed by the secretary that directors' meetings were not necessary. The directors seem to be in accord with the president and the secretary. All of them but one joined in an answer with its president and corporation in this suit. There is no statutory restriction on the powers of the directors to conduct the ordinary business of a corporation similar to the one in the instant case. There is nothing in the record in this case to indicate that the board of directors does not have power to conduct the ordinary business of the corporation. Therefore, we assume the board of directors had such power. 2 Thompson, Corporations (2d ed.) secs. 1065, 1066. Unless there is a restriction by

statute, constitution or by-laws, the management of the ordinary business is vested in the board of directors and cannot be exercised by the stockholders. The authority of stockholders is exhausted in this respect when directors are elected. Nor have the stockholders a right to restrict the control or action of the directors in such matters. 2 Thompson, Corporations (2d ed.) secs. 1178, 1184. There are some matters in which the stockholders have authority to act, but it is not the ordinary business matters. The board of directors is the governing body. 'It was to this body the plaintiff was required to go. Plaintiff made his demand on the directors for action, but it was of no avail. It was disregarded. Plaintiff believed that the president as an officer and director of the company had wrongfully misappropriated and converted the funds of the corporation. As shown, he was the owner of a substantial amount of stock and had been such for years. Plaintiff could not have been expected to do more than he did to get corporate action. The body of the stockholders had no authority to ratify over the objection of a single stockholder most of the acts charged against the president. 4 Thompson, Corporations (2d ed.) sec. 4484; 3 Cook, Corporations (8th ed.) sec. 669. Most of the acts charged were *ultra vires,* as far as the corporation is concerned, as well as beyond the power of the president. These acts were not mere ordinary business transactions which could be ratified by the board of directors or the stockholders, even had the stockholders been empowered to direct the ordinary business transactions of the corporation. It, therefore, would have been useless and unavailing for the plaintiff to have made a demand on the stockholders; if he could have induced them to hold a meeting, under the facts and circumstances set out above. We think that plaintiff made a sufficient demand. The case of *Continental Securities Co. v. Belmont,* 206 N. Y. 7, 99 N. E. 138, 51 L. R. A. n. s. 112, is a case often cited as a leading authority on this question. The following therefrom is pertinent: "In any case where action is taken by stockholders confirming and ratifying a fraud

and misapplication of the funds of the corporation by the directors or others the action is binding only by way of estoppel upon such stockholders as vote in favor of such approval. Morawetz on Corporations, (2d ed.) sec. 625."

See *Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 41 Neb. 374, 59 N. W. 838; *Folts v. Globe Life Ins. Co.*, 117 Neb. 723, 223 N. W. 797; 7 R. C. L. 319, sec. 296; *Reed v. Hollingsworth*, 157 Ia. 94, 135 N. W. 37; *Wilcox v. Bickel*, 11 Neb. 154, 8 N. W. 436; *Brewer v. Boston Theatre*, 104 Mass. 378.

Appellees also maintain that a stockholder is not entitled to bring a stockholders' suit unless the refusal of the directors and stockholders to take action was unlawful and not a proper exercise of the discretion vested in them. They contend that there may be valid reasons for the directors not to bring the suit, even where there is a valid cause of action where the litigation may involve more expense than it would be worth and there may be doubt as to whether it may be successful; that it may be a better business policy to refrain from suits in order to preserve certain relations with other parties, or to recover judgments on the cause of action may only invite ruin to the corporation; that the directors had refrained from bringing suit against the president for sound business reasons because the directors and officers knew that the president had taken the bonds in good faith, and that if the corporation sued the president Baxter would immediately levy on the proceeds. Also they maintained that such suit was not permitted by an individual stockholder unless the acts amounted to actual or constructive fraud; that the acts charged were only voidable and not void. To sustain these propositions the appellees again cite many authorities. However, in the instant case, plaintiff alleged and proved misapplication and wrongful conversion of the corporate funds. It would be more than a business policy to ratify such acts. In such a case a court of equity has jurisdiction. *Howell v. Poff*, *supra*.

We are satisfied after a careful study of the entire record

in this case that the plaintiff was justified in bringing this suit and has proved sufficient facts to entitle him to some relief for the corporation. This case presents more than a question of internal dissentions among stockholders or mere differences and disputes as to their dissatisfaction with corporate management, and more than the ordinary business of the corporation. It presents such a state of facts as warrants intervention by a court of equity. It is put thus in 2 Thompson, Corporations (2d ed.) sec. 1197: "While ordinarily the courts will not interfere in the internal management of the corporate affairs, which must be exercised within the discretion of corporate officers, yet by reason of the fiduciary relation which directors occupy to the corporation all transactions between the corporation and a director or officer will be subjected to the rigid scrutiny of the courts, and if they are unfair, or against the interests of the corporation, then the rule does not apply."

Therefore, the defendant Hartigan should pay to the defendant corporation the amount of $24,800, the amount being the value of said bonds so converted with interest thereon. Whether or not said corporation shall purchase said real estate bought with part of the proceeds from the sale of said bonds so converted or accept the declaration of trust so proffered is a matter for the proper corporate authority to decide, as also is the amount that it shall pay for said real estate, if it so accepts said real estate; also the allowance of attorney's fees and expenses to the defendant Hartigan, officers' salaries and other attorneys' fees, is a matter for the corporation to decide. No valid reason is given why an officer thereof should take its assets, other than provided by law, to pay claims against the corporation that have not been audited and allowed in a lawful way by the corporation.

The judgment of the district court is affirmed in that part wherein a receiver is not appointed and wherein it does not allow any attorneys' fees, expenses and other claims paid or obligations created by the defendant Harti-

gan for and in behalf of said corporation, and wherein it does not change the salaries of the officers of the corporation. In all other respects said judgment is reversed and it is ordered that the defendant Hartigan pay to said corporation the sum of $24,800 with interest thereon at 6 per cent. per annum from January 1, 1934; that the defendant corporation pay the sum of $400, taxed as costs, to plaintiff for plaintiff's attorneys for services to them in the district court and in this court in this case, and that the appellees pay the other costs taxed in the action both in the district court and in this court.

AFFIRMED IN PART AND REVERSED IN PART.