ELECTRONIC DEVELOPMENT COMPANY, A CORPORATION, APPELLEE AND CROSS-APPELLANT, V. ANDREW M. ROBSON ET AL., APPELLANTS AND CROSS-APPELLEES, FAYE D. KNAPP ET AL., APPELLEES AND CROSS-APPELLANTS.

28 N. W. 2d 130

Filed June 13, 1947.    No. 32127.

*Morsman & Maxwell, Edgar M. Morsman III,* for appellants and cross-appellees.

*Leon, White & Lipp,* and *Lloyd Dort,* for appellees and cross-appellants.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and ANKENY, District Judge.

ANKENY, District Judge.

This is an action wherein the plaintiff Electronic Development Company, a corporation, seeks specific performance of an instrument purporting to be a contract between said corporation and the defendant Robson-Burgess Company, a copartnership, and for an accounting based upon the contract against said partnership and its partners, defendants Andrew M. Robson and Frank D. Burgess, Jr. Stockholders of the plaintiff corporation, Faye D. Knapp, Charles F. Betcke, and Betty Betcke, as interveners, seek to have the contract declared invalid on account of (a) default of corporate authority in the officer executing the contract on behalf of the plaintiff corporation, and (b) violation of corporate fiduciary duties of the said defendants Robson and Burgess, as officials and directors of plaintiff corporation, in executing the contract in behalf of the defendant partnership. Interveners also seek an accounting from the defendant partnership and its partners as fiduciaries of the said corporation.

Defendant Robson-Burgess Company and its partners, defendants Andrew M. Robson and Frank D. Burgess, Jr., appear here as appellants; plaintiff Electronic Development Company appears as appellee and cross-appellant; and interveners Faye D. Knapp, Charles F. Betcke, and Betty Betcke appear as appellees and cross-appellants.

As a convenience, Electronic Development Company will hereafter be referred to as plaintiff or the corporation, defendant Robson-Burgess Company as the partnership, defendant Andrew M. Robson as Robson, defendant Frank D. Burgess, Jr. as Burgess, and Faye D. Knapp, Charles F. Betcke, and Betty Betcke as interveners.

The case is here on a voluminous record and extensive

briefs. However, an understanding of the case does not require a detailed statement of the numerous claims made by the parties. Therefore we will set out merely the controlling facts but with sufficient adequacy to disclose the true picture and to show the applicability of the rules which are decisive.

Plaintiff was organized as a corporation in 1938 with offices and plant in Omaha, Nebraska. For a period of 15 years prior thereto the organization operated as a partnership under the name Electronic Company, of which George Risk was a partner. Prior to incorporation it engaged in the manufacture of various electronic devices, intercommunication equipment, public address systems, diathermy equipment, microphones, and some test equipment. After incorporation the company discontinued the manufacture of diathermy equipment and microphones but continued the manufacture of the other devices. From 1938 to 1942 it operated an extension and residence school for training workers in electronics and in connection therewith manufactured various equipment and parts necessary for the training of its students, particularly in the assembly and repair of such devices. In 1942, and subsequently, it received contracts from government agencies to train army, navy, and marine personnel in the operation and servicing of electronic and radar equipment, and it maintained schools in Omaha and Minneapolis for this purpose. In connection with the operation of these schools, the corporation built intricate and precise equipment not otherwise available, thereby obtaining favorable recognition from government agencies in awarding contracts for the manufacture of electronic equipment.

The managing officers of the corporation were George Risk, president, having the usual duties of the office; defendant Robson, vice president and assistant treasurer, in charge of operations with special duties to supervise, direct, and control the technical phases of the corporation's business; and defendant Burgess, general manager,

with special duties to coordinate the various activities of the corporation, supervise its bookkeeping, and assist in the negotiation of loans and government contracts, etc.

On March 31, 1944, plaintiff was awarded a government contract, known as "1049-DAY-44" for the manufacture of 20 modulators, a type of test equipment otherwise referred to as IE-modulator, by the Dayton Signal Corps Procurement District of Dayton, Ohio, at a price of approximately $10,000. The fulfillment of this contract was well under way in June 1944 when the plaintiff began to experience a financial crisis which became acute about the middle of June 1944 when its bank and the Reconstruction Finance Corporation withdrew loan credits, demanded payment of loan balances, and refused to extend the company further loans or credit. Because of such restricted credit the corporation was unable to finance its current obligations. Its lack of such credit jeopardized its ability to perform the contracts and other obligations it had assumed. Such condition also threatened to dissipate the favorable status which the corporation had achieved at the expense of much time, money, and effort for obtaining future business, especially government contracts.

In order to protect a partially performed government contract with the United States Marine Corps for the training of marine personnel, the managing officers about July 1, 1944, caused a corporation to be formed under the name Electronic Institute, Inc., and said contract, together with all leases, necessary equipment, and facilities, to be assigned to said corporation without consideration other than the obligation on its part to turn over to plaintiff, on completion of the contract, all net earnings resulting from its performance. By virtue of such transaction the marine contract was in due time completed, resulting in a profit turned back to plaintiff.

To protect the fulfillment of the "1049-DAY-44" modulator contract, Robson and Burgess, about the middle of July 1944, suggested to George Risk their willingness

to form a partnership to take over from plaintiff the test equipment necessary for the fulfillment of such contract, offering to pay plaintiff the invoice cost of materials and direct labor cost expended to that date and to finance all operations necessary for its completion. An important factor in connection with the negotiations which followed was the desire of the parties to keep the corporation, or the contemplated partnership, in a favorable position to obtain a certain government contract with the Dayton Signal Corps Procurement District which then was expected to be let soon for the manufacture of 700 modulators at a cost price in excess of $280,000. There is no dispute that these parties, prior to the execution of the contract here in question, agreed that the corporation, because of the position it had built for itself in manufacturing electronic devices was properly entitled to an interest in such contemplated contract if awarded to the proposed partnership. Under such conditions George Risk, without direct authority from the board of directors or the stockholders, assuming to act on behalf of plaintiff, and Robson and Burgess, acting in behalf of the then contemplated partnership, later organized as the Robson-Burgess Company, executed the following executory agreement, to wit:

"Omaha, Nebraska
July 22, 1944

AGREEMENT

It is hereby agreed by and between the Electronic Development Company, Omaha, Nebraska, and the Robson-Burgess Company, Omaha, Nebraska,

WHEREAS, since certain circumstances prevent the Electronic Development Company from completing contract #1049-DAY-44 on schedule, it has requested the Signal Corps to cancel said contract and reissue to the Robson-Burgess Company for completion.

IT IS AGREED THAT, the Robson-Burgess Company will reimburse the Electronic Development Company $1807.99 for parts, equipment, and labor which have

been fully paid for and are free from any incumbrance; and assume unpaid parts and labor of $524.13 provided the contract is awarded to them.

That, the payments will be made in the following manner:

$1444.63 in cash

561.88 offsetting credit for partial salaries due A. M. Robson and F. D. Burgess, Jr.

325.61 to be paid in cash, same to be applied directly to unpaid accounts for parts received by the Electronic Development Company on credit.

IT IS FURTHER AGREED THAT, the Robson-Burgess Company would utilize the facilities of the Electronic Development Company for a period of not less than one year and remunerate the Electronic Development Company for the use of such facilities at an actual cost to the Electronic Development Company. In consideration of this the Robson-Burgess Company agrees to, at any time within a year from above date, to allow the Electronic Development Company to absorb its assets, contracts, good will, and profits in excess of $1400.00 per month from date of this agreement, and it is understood that at such time that the Electronic Development Company will absorb the Robson-Burgess Company it will also absorb the services of A. M. Robson and F. D. Burgess, Jr. at their present prevailing salaries of the Electronic Development Company, and such employment to be assured for a period of one year.

In the event that the contract #1049-DAY-44 is not awarded to the Robson-Burgess Company, this agreement becomes null and void.

Signed and sealed this 22nd day of July, 1944.

| Witness | ELECTRONIC DEVELOPMENT COMPANY, |
|---|---|
| Sidney N. Jacobs | By George Risk |
| Helen M. Helgren | President |

|  |  |
|---|---|
| Witness | ROBSON-BURGESS COMPANY, |
| Sidney N. Jacobs | By A. M. Robson |
| Helen M. Helgren | Partner |
| Yeolande Beadle |  |
| Witness |  |
| Helen M. Helgren | By F. D. Burgess, Jr., |
| Yeolande Beadle. | Partner." |

It should be observed here that the price the partnership agreed to pay for parts, equipment, and labor referred to in the contract was the invoice cost of the materials and the direct labor cost then expended, or for which the corporation was obligated, and does not include promotion or administration costs incurred by plaintiff. It also should be observed that the partnership acquired the right to the facilities of the corporation, at actual cost, for a period of not less than one year, which amounted to the termination of its operation for such period and, obviously, was beyond the ordinary business to be transacted by such corporate officers.

As part of the same transaction, and in keeping with the terms of the foregoing agreement, George Risk, in the presence of Robson and Burgess, dictated and addressed a letter to the Dayton Signal Corps Procurement District, under date of July 21, 1944, containing words as follows: "The Electronic Development Company is suffering from certain financial embarrassments and, at this time, are undergoing a financial reorganization. * * * Because of the financial drain that this department (the test equipment department in which the IE-45 modulator units referred to in contract 1049-DAY-44 were built) makes on the corporation, its operation must be temporarily discontinued. We, therefore, request that the contract (1049-DAY-44) be cancelled with the Electronic Development Company and be reissued directly to the Robson-Burgess Company, Omaha, Nebraska, which is operated by Mr. A. M. Robson and Mr. F. D. Burgess, Jr. They are in a position to take over

and complete said contract. * * * As soon as financial reorganization has been completed, we will again be in a position to consummate any future contracts upon which we may have the privilege of bidding. We hope this will not preclude us from such invitations in the future."

The letter, of which the foregoing is a part, then was taken in person by Robson to the offices in Dayton, Ohio, of the Dayton Signal Corps to which it was addressed. Accordingly, as requested in such letter, the Dayton Signal Corps caused contract 1049-DAY-44 to be canceled and, within a short time thereafter, to be reissued to the partnership.

Pursuant to the contract here in question, the president of the corporation executed in its name, for a recited consideration of $1,522.48, a bill of sale to the partnership, identified in the record as Exhibit 10, by which it assumed to sell and transfer to the partnership certain listed tools, materials, and supplies as set forth in an attached list of 110 items designated "Inventory of parts bought for construction of IE-45 modulator." Subsequently said president in the name of the plaintiff executed a bill of sale to said partnership, identified in the record as Exhibit 11, by which it assumed to sell and transfer to the partnership, for a recited consideration of $1,222.75, certain furniture and equipment.

It appears from the record that, subject to a subsequent agreed revision of figures, Robson and Burgess made all payments to plaintiff required of them by the terms of the written agreement.

The entire transaction between the parties, as evidenced by the above-mentioned documents, was consummated by Risk, Robson, and Burgess, the sole managing officers of the corporation, without regard to or authority from plaintiff's board of directors or its stockholders.

With the assistance of several of the plaintiff's skilled employees, who transferred their employment to the

partnership upon the making of the agreement in question, and others, the partnership was able to and did complete the 1049-DAY-44 contract within a period of two weeks from July 24, 1944, "except for transformers and choke," the delivery of which was delayed, and on completion of this modulator contract the partnership received the gross sum of $10,083.53. This amounted to 7.7 percent of the gross income of the partnership for the year succeeding its formation. Other business of the partnership during said period consisted of the manufacture of multitesters accounting for 26.5 percent, voltage dividers accounting for 65.6 percent, and miscellaneous items accounting for .1 percent of the partnership's gross income.

Plaintiff and interveners made due demand on the partnership for an accounting and return of all the assets and profits of the partnership. Defendants at no time attempted in any manner to rescind said contract. Nor did they indicate they would refuse compliance with its terms until July 23, 1945, after plaintiff had made due demand upon them, under the "reabsorption clause," at which time their attorneys, by letter, declined to comply with such demand.

In an interlocutory decree the trial court found and determined (1) that the agreement in question, and the transfers of property from the corporation to the partnership, were invalid and that a trust resulted, (2) that the plaintiff was the owner and entitled to the immediate possession of all gross profits made on government contracts by the partnership to August 31, 1945, including contract termination benefits thereon, and that an accounting thereof should be made, and (3) in the accounting of the profits on government contracts, the partnership should retain as compensation for the services rendered by Robson and Burgess a sum which would bear the same ratio to $18,200 (representing a salary basis of $1,400 per month for the thirteen-month accounting period) as the profits on

government contracts would bear to the aggregate profits of the partnership operations for the period of the accounting, and the partnership should keep all profits from the manufacture of mutitesters and could continue in the manufacturing business.

Upon accounting the court fixed the liability of the partnership and its partners, Robson and Burgess, at $29,129.12 and entered judgment therefor and costs.

On the facts established by the record, and the principles of law applicable, the decree of the trial court, as herein modified, was properly rendered.

The agreement in question was executed by the president of the corporation without authority from the stockholders or the board of directors. We cannot presume that he had power to sign the contract and bind the corporation. "It is true that a corporation can act only by its agents, and the presumption is that an act pertaining to its ordinary business, when performed by its president, secretary or general manager, is legally done and is binding upon the corporation, yet no such presumption prevails, when the act done by such officers does not fall within the scope of the powers conferred upon and usually exercised by them as part of the ordinary business of the corporation." Traphagen v. City of South Omaha, 69 Neb. 577, 96 N. W. 248. As a general rule the president of a corporation has little or no inherent power to bind the corporation outside of a comparatively narrow circle of the functions especially pertaining to his office. "While the extent of the inherent authority of the president is not clearly defined, it seems to be quite limited; he has no general inherent authority to act as its agent in making contracts, but like other agents, he must derive his authority from the board of directors or from the corporation; * * *." 7 R. C. L., § 436, p. 450. "As a general rule, the president of a corporation has no authority merely by virtue of his office to effect a sale or incumbrance of its real or personal property, * * *. He must, at least

to make a general conveyance of the assets, have the assent of the board of directors." 13 Am. Jur., § 904, p. 882. In 4 Cook on Corporations, (8th ed.) § 716, p. 2981, it is said: "The president of a corporation has no power * * * to buy, sell, or contract for the corporation, nor to control its property, funds, or management. * * * But the general rule is that the president cannot act or contract for the corporation any more than any other director."

Here the contract was executed by the president on his own responsibility. It must therefore be regarded solely as the president's undertaking. The fact that the contract is not legally enforceable against the plaintiff must be given due consideration in determining the right of the corporation to the remedy of specific performance. See 49 Am. Jur., § 36, p. 50. This court is committed to the doctrine announced in Moore v. Markel, 112 Neb. 743, 201 N. W. 147, and quoted with approval in Rudolph v. Murphy & Son, 121 Neb. 612, 237 N. W. 659: "If one party to a contract cannot enforce substantial performance, a court of equity will not decree specific performance at the instance of the other party. The right to specific performance must be mutual and reciprocal."

The foregoing principles of law, when applied to the undisputed facts in this case, do not warrant the exercise of the court's discretionary power to decree, in behalf of the corporation, specific performance of the contract in question.

In our opinion officers of a corporation as such cannot enter into a contract on its behalf by which they dispose of its assets or grant the right to or use of its facilities to the extent of terminating its ability to operate. Authority for such transaction must come from stockholders and directors. It is not the ordinary business that officers may transact.

In our opinion the principles of law which control the determination of this case are not limited to nor conditioned by consideration of the terms of the writ-

ten agreement. The entire transaction must be considered. It is undisputed that the transaction which forms the basis of this action was negotiated by and between the three sole managing officers of the plaintiff without express corporate authority. It resulted from the financial crisis which confronted the corporation at the time. The methods used by these officers in their attempt to solve its financial problems pose for our consideration. These financial difficulties placed a particular duty on its managing officers. They were the officers to whom management of the corporate business was entrusted. Their single purpose should have been to bring the company to a successful fruition. See 2 Thompson, Corporations, (3d ed.) § 1327, p. 797. In the furtherance of this purpose these officers were bound to manage the corporation in the interests of its owners, the stockholders, as a whole, and not in the interest of themselves or any particular stockholders. The managerial duty of a corporate officer is of such a degree of legal and practical importance that if he fails to conduct the affairs of his enterprise with the care of a reasonably prudent officer, he becomes liable to his company or its stockholders for negligent management. His obligation "is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him by the stockholders who appointed him their agent." Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328.

When the corporation was confronted with the financial crisis and was unable to discharge its current obligations, the duty then rested as heavily on Robson and Burgess, as managing officers, as upon Risk, the president, to seek and solve in a proper manner the corporation's financial difficulties. It does not appear that these defendants assumed, much less discharged, such responsibility. Risk appears to have made repeated efforts for loans with which to refinance the operations. Defendants Robson and Burgess, on the other hand, do not

appear to have put forth a bona fide effort toward a legitimate solution of the corporation's financial problem. In the corporation's financial crisis they appear to have been motivated toward one solution only, and that was to divert the unfinished 1049-DAY-44 contract to themselves, together with the equipment and facilities necessary for carrying out the contract. They frankly admit that they were motivated in part by their own interests. Their manifest efforts to secure the executory agreement, to purchase the equipment necessary for completion of the government contract on a basis below cost to the corporation, and to use the facilities of the corporation, confirms the conclusion that these defendants bypassed, as it were, the duty which rested on them to finance the corporation's operations in a proper manner and in the interest of its stockholders.

" * * * when one accepts a position of trust in the management and conduct of the affairs of a corporation, he owes to said corporation the duty, not only to conduct, promote, and safeguard its interests, but also the further duty of refraining from doing anything whatever that would injuriously affect said corporation, or deprive it of any profits which skill and ability might properly bring to it, or enable it to make, in the fair and legitimate exercise of its powers." Jasper v. Appalachian Gas Co., 152 Ky. 68, 153 S. W. 50, Ann. Cas. 1915B 192.

Defendants Robson and Burgess contend that the executory agreement in question, so far as the right of absorption clause in the contract is concerned, is not binding upon them for the reason that it was agreed between said parties that it should be binding only on the condition that the partnership should obtain the contemplated contract for the manufacture of 700 modulators and that they never secured such contract. This contention is strenuously denied by the corporation and by the interveners herein. As we view the case, the determination of this issue is immaterial. We conclude that the entire transaction evidenced by the executory

agreement, as well as the later bills of sale, is voidable at the option of the corporation or its stockholders as in violation of the fiduciary duties of the managing officers of the corporation without regard to the claimed conditional character of the instrument.

Defendants also argue, and we recognize that there is some authority for the contention, that where a corporation is insolvent or legally disabled from carrying out a favorable contract which it has entered into, it is immaterial who takes over the opportunity. The rule thus contended for, so far as we have been able to find, applies only in case the corporation is actually insolvent to such a degree that it cannot carry on business or the corporation is legally disqualified from embracing the opportunity. Financial inability, unless it amounts to insolvency to the point where the corporation is practically or actually defunct, is insufficient to warrant application of the rule. We do not find, from our search, any authority for applying the rule to technical insolvency such as inability to pay current bills when due or where mere inability to secure credit prevails as appears in this case.

We find and conclude that the transaction which is the basis of this action involves (1) an agreement between the sole managing officers of a corporation whereby one of them, in effect, attempts to transfer to the other two personally, contingent or absolute ownership of a valuable manufacturing contract, (2) an attempted transfer by one managing officer to the other two managing officers of personal property, assets, and facilities of the corporation, without corporate authority and at a price below the reasonable cost to the corporation, and (3) an attempt to transfer corporate assets by one managing officer to the other two managing officers of a corporation, in payment of a debt due them by the corporation.

We apply in this case the following principles: (1) a transaction between officers of a corporation outside

the scope of the ordinary business entrusted to them is not binding on the corporation or its stockholders; (2) managing officers are not exempt from the rule of the humblest agent in the service of his principal that an agent cannot use the property of his principal for private gain; and (3) property of the corporation constitutes a trust fund in the hands of its officers and directors, and a transaction between them whereby the corporation's property is diverted from the corporation to their own use and benefit will not be upheld.

The principles applied in this case are sustained by the authorities as follows: "An officer or director of a corporation occupies a fiduciary relation towards the corporation and its stockholders." Fisher v. National Mtg. Loan Co., 132 Neb. 185, 271 N. W. 433; Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393. "A director of a corporation should refrain from all acts inconsistent with his corporate duties * * * ." Howell v. Poff, 122 Neb. 793, 241 N. W. 548. "An officer or director of a corporation will not be permitted without authority to divert corporate property to the payment or securing of a debt of the corporation to himself." Fisher v. National Mtg. Loan Co., *supra*.

"No principle in the law of corporations, therefore, is founded on sounder reasons, or more surely settled, than the principle that the directors, trustees or other officers of a corporation, who are intrusted with its interests, and occupy a fiduciary relation towards it, will not be allowed to contract with the corporation, directly or indirectly, or to sell property to it, or purchase property from it, where they act both for the corporation and for themselves. In such a case, the transaction is, at least, voidable at the option of the corporation; and it may be avoided and set aside, or affirmed and any profits recovered, without proof of actual fraud, or of actual injury to the corporation. * * * Generally, this rule is applied in case of directors but it is equally applicable

to other officers." 3 Fletcher, Cyclopedia Corporations, (Perm. Ed.), § 924, p. 275.

"A fiduciary by abandoning his trust and by assuming toward the beneficiary a hostile attitude cannot change the legal consequences of former relations and conduct." Nebraska Power Co. v. Koenig, 93 Neb. 68, 139 N. W. 839.

The trial court determined the partnership liability from July 22, 1944, to August 31, 1945, on the following basis:

### Liability of Partnership

| | |
|---|---:|
| Profits on government contracts | $42,486.38 |
| ½ of salary Miss Beadle | 770.00 |
| ¼ of salaries Mrs. Robson and Mrs. Burgess | 799.38 |
| Profits on termination of U. S. contracts | 4,243.45 |
| Total due without deductions | $48,299.21 |

### Deductions due Partnership

| | | |
|---|---:|---:|
| Sub-contractors on termination __$ | 588.81 | |
| Packing | 103.20 | |
| Light and power | 30.00 | |
| Insurance | 49.00 | |
| Robson and Burgess work on termination | 1,100.00 | |
| Depreciation on equipment | 600.00 | |
| 89.75% of salary of $1,400 per month | 16,699.08 | |
| Total deductions | $19,170.09 | 19,170.09 |
| Amount of judgment | | $29,129.12 |

In this accounting the trial court charged the partnership with profits on government contracts amounting to $42,486.38, or 89.78 percent of the total profits for the accounting period; also with $4,243.45 as profits on termination of U. S. contracts; but did not charge it with the profits on non-government business amounting to $4,836.70, or 10.22 percent of the total profits.

All these profits resulted from the breach of duty of the fiduciaries and an accounting of such profits should therefore be required.

It is further contended by the corporation and by the interveners that (1) all business, assets, and good will of the partnership should be returned to the corporation, (2) that the deductions for salaries paid Mrs. Robson and Mrs. Burgess should be disallowed, (3) that Robson and Burgess should not be permitted any salary or "especially any allowances in excess of $11,600 per year from July 22, 1944" as a deduction in connection with their liability, and (4) the depreciation of 10 percent, or $600, on equipment be disallowed.

We have given due consideration to these contentions and, in doing so, reach the following conclusions:

That the corporation was at all times the owner and entitled to possession of the personalty set out and described in the two bills of sale, identified in the record as Exhibit 10 and Exhibit 11, and that said unlawfully diverted assets of the corporation, or the portion thereof existing and available as of August 31, 1945, should be returned by the defendant partnership and its partners to the corporation; or in the event of failure to return said property, or any part thereof, said defendants pay to the corporation the reasonable value thereof as of said date, less the sum paid by said defendants as consideration for said corporate assets.

That all business, assets, and good will of the partnership grew out of and resulted from the fiduciary relationship between Robson and Burgess and the plaintiff corporation and therefore all business, assets, and good will, and all profits from the partnership business, including non-government contracts as well as government contracts, should be returned to the corporation and that an accounting should be made of the period from August 31, 1945, to the day when such business is actually returned to the corporation as herein directed.

That the full salary paid Mrs. Robson, Mrs. Burgess, and Miss Beadle by the partnership was reasonable and proper credit, and should be allowed as proper expenses incurred in the prosecution of the partnership business.

That the fair and reasonable salary of Robson and Burgess for the accounting period should not be $18,200, but that their said services were fairly and reasonably worth $12,566.66, and adjustment should be made accordingly.

That the depreciation on equipment as determined by the trial court should be allowed.

We therefore conclude that the judgment rendered herein by the trial court should be modified, and such further proceedings had as will conform to the foregoing findings. In all other respects said judgment should be and is hereby affirmed.

AFFIRMED AS MODIFIED.