Demos **YIANNATSIS**, Stella Yiannatsis and Sunview Corporation, a Delaware corporation, Defendants Below, Appellants,

v.

John **STEPHANIS**, by Maria Stephanis **STERIANOU**, his attorney-in-fact, Plaintiff Below, Appellee.

No. 209, 1994.

Supreme Court of Delaware.

Submitted: Jan. 5, 1995.

Decided: Feb. 8, 1995.

Edward M. McNally (argued), Morris, James, Hitchens & Williams, Eric C. Howard, Wilson, Halbrook & Bayard, Wilmington, for appellants.

Collins J. Seitz, Jr. (argued), and Arthur G. Connolly, III, Connolly, Bove, Lodge & Hutz, Wilmington, for appellee.

Before VEASEY, C.J., WALSH and BERGER, JJ.

VEASEY, Chief Justice:

In this appeal we consider the claims of defendants below-appellants Stella ("Stella") and Demos ("Demos") Yiannatsis that the Court of Chancery erred in finding: (1) that Stella's purchase of a block of Sunview Corporation ("Sunview") shares owned by deceased stockholder Costas Stephanis ("Costas") constituted an expropriation of a corporate opportunity; (2) that plaintiff below-appellee/cross-appellant John Stephanis ("John") did not ratify Stella's actions; and (3) that attorneys' fees and past payments were not to be included in the amounts due Stella. Additionally, we consider John's claim on cross-appeal that the Court of Chancery erred in not appointing a custodian. We hold that Stella and Demos breached their fiduciary duties in not presenting the opportunity to Sunview to purchase the Costas shares before Stella purchased the shares; that John did not ratify Stella's actions; and that Stella is not entitled to past payments or attorneys' fees. We further hold that the Court of Chancery did not err in failing to appoint a custodian. For the reasons set forth below, we **AFFIRM** the judgment of the Court of Chancery.

## I. FACTS

Sunview is a family-owned, closely-held Delaware corporation that owns real estate and seasonal businesses on the boardwalk in Rehoboth Beach, Delaware. It was formed in 1973 to hold the Rehoboth properties and to operate the businesses that had been owned and operated by a family of Greek immigrants since the 1940s. Sunview's original stockholders were Demos, John and Costas, all of whom were related.

At the inception, Demos, John and Costas comprised Sunview's Board of Directors, and each was responsible for operating at least one of the family businesses. Demos and his family operated the Sunview motel, Costas and his family operated the ice cream parlor, and John and Costas together operated the arcade. The operators of the motel and the ice cream parlor made payments akin to rent to Sunview. In return, they retained all profits earned from the operation of these businesses. In addition, Sunview paid each stockholder a salary-like bonus from the arcade's net profits.

In 1984, Costas died, whereupon John and his wife took over operating the ice cream parlor. After Costas' death, Costas' estate and the remaining stockholders entered into negotiations concerning the sale of Costas' stock pursuant to an "Agreement Restricting Right to Transfer Stock Between Demos Yiannatsis, Costas Stephanis and John Stephanis" (the "1975 Agreement").

The 1975 Agreement provides that if a Sunview stockholder or the executor/administrator of a deceased holder's estate desires to sell or transfer his stock, the stockholder first must deliver written notice to Sunview which has the right of first refusal. The notice must provide the number of shares offered for sale and the price at which the shares are offered; should a disagreement arise as to the stock valuation, Sunview would enlist three appraisers to value the stock. The overriding purpose of the 1975 Agreement was to ensure "that neither the present stockholders nor their heirs, executors, administrators or assignees [ ] sell any of the stock in said Sunview Corporation to any fourth party."

Sunview never invoked the 1975 Agreement upon Costas' death. Rather, counsel representing Costas' estate haggled over the price of the Costas Stock with Demos and Stella.[1] Eventually, Costas' estate offered to sell the Costas Stock for $250,000. Sunview's counsel counter-offered at $150,000. At the December 14, 1984, Sunview Annual Board of Directors' Meeting, Costas' estate offered to sell the Costas Stock for $150,000 cash plus $55,000 payable over a certain

---

1. In a letter to Demos and Stella, Costas' estate valued the shares between $188,000 and $258,000, as adjusted for outstanding mortgage obligations, plus one third of the value of the business. John never received a copy of this letter.

number of years. That same day Sunview rejected the offer, claiming it did not have sufficient funds. One business day later, however, Stella offered personally to purchase the Costas Stock for $150,000 cash plus $55,000 over time, secured by Sunview's assets. Stella claimed she purchased the Costas Stock because she was in a dilemma—caught between the *Scylla* of Costas' estate offering the Costas Stock to strangers, and the *Charybdis* of Sunview purchasing the shares and going bankrupt.

Eight years later, John sued Demos and Stella derivatively on behalf of Sunview, alleging that Stella improperly usurped a corporate opportunity when she bought the Costas Stock. On October 4, 1993, the Court of Chancery found that Demos and Stella caused Sunview to reject the opportunity to purchase the Costas Stock and diverted the opportunity to themselves (*"Stephanis I"*). As a result, Stella held the stock as a constructive trustee. Consequently, Stella sought reimbursement, and in an opinion dated May 9, 1994, the Court of Chancery determined that Stella should be paid $144,860.12 for the Costas Stock (*"Stephanis II"*).

## II. STELLA'S PURCHASE OF THE COSTAS STOCK

■ A trial court's finding on "the duty of loyalty ... being 'fact dominated,' [is], on appeal, entitled to substantial deference unless clearly erroneous or not the product of a logical and deductive reasoning process." *Cede & Co. v. Technicolor, Inc.,* Del.Supr., 634 A.2d 345, 360 (1993) (quoting *Citron v. Fairchild Camera & Instrument Corp.,* Del. Supr., 569 A.2d 53, 64 (1989)).

■ Generally, this Court will begin its inquiry into whether a corporate opportunity has been usurped with the test set forth in *Guth v. Loft, Inc.,* Del.Supr., 5 A.2d 503 (1939). *Guth* provides that such a situation exists:

[I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is ... in the line of the corporation's business and is of practical advantage to it, is one in which the corporation

has an interest or a reasonable expectancy, and, by embracing the opportunity, the self-interest of the officer or director will be brought into conflict with that of his corporation....

*Id.* at 511; *see also Fliegler v. Lawrence,* Del.Supr., 361 A.2d 218, 220–21 (1976) (holding conflict arose where defendants stood on both sides of corporate opportunity); *Schreiber v. Bryan,* Del. Ch., 396 A.2d 512, 519 (1978) (corporate opportunity seized when the opportunity is one in which corporation has an interest or expectancy, the corporation is financially able to take advantage of the opportunity, and the individual acted in an official rather than individual capacity).

Demos and Stella do not argue with the Court of Chancery's formulation of the test for determining whether a corporate opportunity has been usurped, or with the court's application of the test to the instant facts. Rather, they claim that the court incorrectly found that Sunview was financially able to purchase the Costas Stock, and as a result, reached the erroneous conclusion that Stella usurped a corporate opportunity.

As the Court of Chancery noted in *Stephanis I,* Delaware has never considered "what standard should be used when determining whether a corporation is financially able to avail itself of a corporate opportunity." *Stephanis I,* slip op. at 8. The Court of Chancery relied generally on 18B AM.JUR.2D *Corporations* § 1790 (1985) for the proposition that "mere technical insolvency, such as the inability to pay current bills when due or mere inability to secure credit, will not suffice [to show financial inability]. The corporation must be actually insolvent." *See also CST, Inc. v. Mark,* 360 Pa.Super. 303, 520 A.2d 469, 472, *appeal denied,* 517 Pa. 630, 539 A.2d 811 (1987); Annotation, *Financial Inability of Corporation to Take Advantage of Business Opportunity as Affecting Determination of Whether "Corporate Opportunity" was Presented,* 16 A.L.R.4th 185 (1982).

Using this standard, the court found that Sunview was not insolvent and could have completed the transaction as evidenced by (1) Sunview's $150,000 offer to buy the Costas

Stock one month before Stella bought the Stock; (2) Sunview's ability to reduce payments to its stockholders to generate more income for Sunview; (3) Sunview's ownership of real estate worth more than one million dollars; (4) the fact that Demos and Stella owned substantial assets; and (5) Stella's securitization of the $55,000 with Sunview's assets.

■ Demos and Stella contend that the Court of Chancery erred in requiring a finding of insolvency before a corporation can be said to be financially unable to avail itself of a corporate opportunity. There is no need for us to consider either this claim of error or the Court of Chancery's findings of financial inability. Accordingly, we do not determine whether or not the "insolvency-in-fact" standard adopted by the Court of Chancery for determining financial inability is the appropriate standard to apply in corporate opportunity cases.[2] We hold instead that this case turns on the Court of Chancery's finding that "Sunview never invoked the 1975 Agreement upon the death of Costas," *Stephanis I,* slip op. at 3. Accordingly, we hold that Demos and Stella breached the fiduciary duties they owed to John and Sunview by failing to present properly the opportunity to Sunview to purchase Costas' shares.

The record reveals that Sunview's opportunity to purchase the Costas Stock was never properly presented to Sunview, and that Demos and Stella acted without regard for the 1975 Agreement or the fiduciary duties they owed to Sunview and John.[3] Demos' and Stella's claim that Sunview applied for a loan

but was rejected is not borne out by the evidence. Sussex Trust (now known as Wilmington Trust), the bank that Demos and Stella claim rejected Sunview's loan application, has no record of Sunview ever attempting to obtain a loan, much less being rejected for one. Further, the minutes of the December 14, 1984 Sunview Annual Board of Directors' Meeting reflect that the Costas Stock price was determined at the meeting where Stella agreed to purchase the Costas Stock. Given this fact, it would be impossible for Sunview to explore adequately the possibility of purchasing the relevant stock before Stella decided to buy it herself. It is clear that Demos' and Stella's actions are classic examples of the acts of faithless fiduciaries, and they should not benefit from their wrongful actions. This case proves that "[w]hat's wrongly got is soonest lost."[4]

## III. RATIFICATION

The Court of Chancery's conclusion that John did not ratify Stella's purchase of the Costas Stock is a mixed question of law and fact. This Court must consider *de novo* the Court of Chancery's application of the burden of proof, *Kahn v. Household Acquisition Corp.,* Del.Supr., 591 A.2d 166, 175–76 (1991), but need conduct only a limited review of the Court of Chancery's fact-dominated ratification findings. *Cede & Co. v. Technicolor, Inc.,* 634 A.2d at 360.

During the period from December 1984 to December 1989, John signed several documents and contracts that were based upon

---

**2.** While a few jurisdictions have subscribed to this standard, *see, e.g., Jasper v. Appalachian Gas Co.,* Ky.Supr., 152 Ky. 68, 153 S.W. 50 (1913); *Hart v. Bell,* Minn.Supr., 222 Minn. 69, 24 N.W.2d 41 (1946); *Electronic Dev. Co. v. Robson,* Neb.Supr., 148 Neb. 526, 28 N.W.2d 130 (1947); *Klinicki v. Lundgarden,* Or.Supr., 298 Or. 662, 695 P.2d 906 (1985); *Nicholson v. Evans,* Utah Supr., 642 P.2d 727 (1982), we do not adopt the "insolvency-in-fact" test. Since the question of what test should be used to determine financial inability is not presently before the Court, we merely note that the Court of Chancery could consider, in the appropriate case, a number of options and standards for determining financial inability, including but not limited to, a balancing standard, temporary insolvency standard, or practical insolvency standard. *See, e.g., Borden*

*v. Sinskey,* 3d Cir., 530 F.2d 478 (1976); *Katz Corp. v. T.H. Canty & Co.,* Conn.Supr., 168 Conn. 201, 362 A.2d 975 (1975); *Daloisio v. Peninsula Land Co.,* 43 N.J.Super. 79, 127 A.2d 885 (1956).

**3.** Although John's claim is brought derivatively, Demos and Stella had a fiduciary duty to him as an individual as well as their fiduciary duty to the corporation. Since John did not also bring this action individually, we need not decide whether or not an individual cause of action, if asserted by John, would have resulted in any additional relief against Demos and Stella.

**4.** Sophocles, *Oedipus at Colonus,* in *The Theban Plays* 103 (E.F. Watling trans., Penguin Classics ed. 1965).

Stella's purchase of the Costas Stock.[5] Stella and Demos allege that John's actions ratified Stella's purchase of the Costas Stock. The controversy with regard to this issue centers around the proper burden of proof to be applied. Demos and Stella argue that the Court of Chancery erred when it placed upon them the burden of proof concerning John's competency to understand the relevant transactions. John counters by claiming that the burden of proof concerns ratification, and thus, was correctly placed upon Demos and Stella.

■ While Demos and Stella are correct in stating that "[c]ompetency in business transactions is presumed and therefore the burden of proof is imposed on one who would seek to upset a transaction on that ground," the instant case involves ratification, which implicates a different burden. "Ratification can occur only if the stockholders are fully informed of the consequences of their vote. *The burden rests on the party claiming the ratification to establish that the stockholder approval resulted from a fully informed electorate.*" E. Folk, R. Ward & E. Welch, FOLK ON THE DELAWARE GENERAL CORPORATE LAW § 144.5.2.3 (1992) (emphasis added); *see also Smith v. Van Gorkom,* Del.Supr., 488 A.2d 858, 893 (1985); *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 703 (1983).

■ Here, the Court of Chancery correctly found that Demos and Stella did not meet this burden. First, although they point to John's signature on the 1984 and 1985 Annual Minutes to evidence ratification, they also claim that the Minutes are not correct. If the documents relied upon to support ratification are flawed, ratification cannot exist. Second, Stella and Demos both knew that John had only a seventh grade education, could not speak English and was recently diagnosed with Multiple Sclerosis. Moreover, it is undisputed that Stella often translated legal documents which John was called upon to sign as a corporate officer-director. These facts, as the trial court found, tend to indicate that neither Stella nor Demos reasonably could have assumed John to be competent in business transactions. *Stephanis I,* slip op. at 13 n. 8.

Finally, to establish John's competency and understanding, Demos and Stella point to the memorandum to file of December 21, 1984 prepared by Sunview's lawyer, which indicates that Sunview's lawyer read to John, in English, the Minutes of both the December 14 stockholders' and directors' meetings. It is apparent that this evidence does not satisfy the burden of proving ratification since the memorandum states that the Minutes were read in English, and did not mention that (1) Sunview had the right of first refusal; (2) Demos and Stella would be controlling shareholders of Sunview and John would be a minority shareholder; and (3) different consequences would arise if Sunview purchased the Costas Stock.

## IV. DEDUCTION OF ATTORNEYS' FEES AND PAST PAYMENTS FROM THE AMOUNTS DUE STELLA

■ Stella and Demos allege that the Court of Chancery erred when it deducted attorneys' fees and past payments from the amounts due Stella for the repurchase of the Costas Stock. There is nothing in the record which shows that Sunview ever adopted a by-law or resolution providing for indemnification of its officers and directors. Therefore, Stella's claim for indemnification is governed by 8 *Del.C.* § 145(b) which provides that:

(b) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any ... action ... in the right of the corporation to procure a judgment in its favor by reason of the fact that he is or was a director of the corporation ... against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in ... the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been ad-

---

5. John signed the Purchase Agreement, the Stock Certificate issued to Stella, the new Stockholder's Agreement, and the 1985 meeting minutes confirming his agreement to the sale.

judged to be liable to the corporation unless and only to the extent that the Court of Chancery ... shall determine upon adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery ... shall deem proper.

Pursuant to 8 Del.C. § 145(b), the Court of Chancery has the discretion to determine if, "in view of all of the circumstances of the case, the party is fairly and reasonably entitled to indemnity." *Stephanis II*, slip op. at 7, citing 8 Del.C. § 145(b). This Court must treat the Court of Chancery's findings with substantial deference. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d at 360. The Court of Chancery found that Stella was not "fairly and reasonably entitled to indemnity[,]" *Stephanis II*, slip op. at 7, citing 8 Del.C. § 145(b), and it does not appear that the Court of Chancery failed to employ a logical or orderly deductive process in reaching the decision.

Stella and Demos argue that the Court of Chancery based its finding solely on the fact that Stella was adjudged to have usurped a corporate opportunity, claiming that the court failed to consider her conduct and, therefore, its determinative process was in error. Demos and Stella ignore the court's discussion of Stella's lack of "regard for Sunview's or its other shareholders rights." *Stephanis II* at 7. In view of all the circumstances, the court reasoned that it "would be neither fair nor reasonable" to indemnify Stella for impermissible actions taken in callous disregard of Sunview and its stockholders.

■ Demos' and Stella's contention that the Court of Chancery erred in deducting past arcade bonus payments to Stella is also without merit. The court found that the payments were not related to work performed, but were bonus payments resulting from stock ownership. Since Stella would not have received the bonus payments if she had not impermissibly purchased the Costas Stock, she is not entitled to the bonus.

6. The court also found that John's motion was filed right before the start of the most profitable

## V. APPOINTMENT OF A CUSTODIAN

■ Subsequent to oral argument in the Court of Chancery concerning Stella's reimbursement, John moved for an appointment of a custodian pursuant to 8 Del.C. § 226. John asserted that Sunview's ownership is equally held by John and Demos, and that owing to the family feud, they will be deadlocked and unable to elect successor directors or make important business decisions. The Court of Chancery denied John's motion, finding that (1) the motion was untimely filed; (2) there was only one major business decision to be made during the relevant time period and thus no deadlock existed; and (3) Stella and Demos agreed not to enter into any business transactions outside of the ordinary course of business. John argues that the Court of Chancery erred in that it failed to consider that an actual deadlock exists, and due to the timing of the suits and decisions, he was forced to wait to file his motion.

"[T]he appointment of a custodian is discretionary under [8 Del.C.] § 226(a)(1)." Accordingly, this Court may reverse the Court of Chancery's decision only if there is an abuse of discretion. *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 240 (1982) (citing *Pitts v. White*, Del.Supr., 109 A.2d 786, 788 (1954)). Given the scope of review—abuse of discretion—John's claim must fail. There is nothing here that indicates that the Court of Chancery abused its discretion in refusing to appoint a custodian. It correctly followed the leading case on the issue, *Giuricich*, 449 A.2d at 238, applied it to the facts, and found that there is no deadlock requiring appointment of a custodian. Since Demos and Stella have agreed not to undertake any business transaction outside of the scope of ordinary business, appointing a custodian is unnecessary.[6] Should Demos and Stella fail to follow their agreement, John may then bring an action seeking appropriate relief. Therefore, it does not appear that John has shown an abuse of discretion.

## VI. CONCLUSION

We find that Demos and Stella breached the fiduciary duties they owed to John and

season for Sunview, indicating an intention to delay proceedings.

Sunview. They failed to present the opportunity to purchase the Costas Stock to Sunview prior to Stella's purchase of the shares. Accordingly, Stella's purchase of the stock was unlawful. Claims of error asserted by Demos and Stella regarding ratification and exclusion of attorneys' fees and past payments are equally without merit. Further, the Court of Chancery did not abuse its discretion in failing to appoint a custodian. Therefore, John's claim on cross-appeal is unpersuasive. Accordingly, we **AFFIRM** the Court of Chancery's holding.