ACCEPTED
04-12-00630-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/29/2015 2:46:22 PM
KEITH HOTTLE
CLERK

No. 04-12-630-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
AT SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
05/29/2015 2:46:22 PM
KEITH E. HOTTLE
Clerk

The Huff Energy Fund LP, WRH Energy Partners
LLC, William R. "Bill" Huff, Rick D'Angelo,
Ed Dartley, Bryan Bloom, and
Riley-Huff Energy Group, LLC,
*Appellants*,

vs.

Longview Energy Company,
*Appellee*.

Appeal from the 365th Judicial District Court
of Zavala County, Texas
Trial Court Cause No. 11-09-12583-ZCVAJA

## AMICUS CURIAE BRIEF OF ENERQUEST OIL & GAS, LTD.

Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@bmpllp.com
David A. Walton
Texas Bar No. 24042120
dwalton@bmpllp.com
BEIRNE, MAYNARD & PARSONS, L.L.P.
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

Joseph M. Nixon
Texas Bar No. 15244800
jnixon@bmpllp.com
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
Tel. (713) 623-0887
Fax (713) 960-1527

**ATTORNEYS FOR AMICUS CURIAE**

# TABLE OF CONTENTS

IDENTITY AND INTEREST OF AMICUS CURIAE ..........................................1

STATEMENT OF CASE .......................................................................5

ISSUES PRESENTED ..........................................................................5

STATEMENT OF FACTS......................................................................5

SUMMARY OF ARGUMENT ...............................................................6

ARGUMENT.....................................................................................8

    1.    Since directors and officers are uniquely privy to business opportunities that could easily be exploited, fiduciary duties owed by the directors and officers, such as duty of loyalty, must be strictly enforced ...................................................8

    2.    To excuse conduct in breach of the fiduciary duty of loyalty would weaken the fundamental purpose of the corporate opportunity doctrine to the point that the doctrine may not effectively deter a fiduciary from personally developing corporate opportunities....................................................10

    3.    The "interest and expectancy" test should not be applied narrowly, but rather broadly, in the unique circumstances of the oil and gas industry so as not to create a dangerous exception to the duty of loyalty that fosters, rather than prohibits, disloyalty of directors and officers. ................................15

    4.    It would be imprudent to permit directors and officers to exploit corporate opportunities based on their company's *purported* financial inability short of actual insolvency. .................22

PRAYER.........................................................................................26

# INDEX OF AUTHORITIES

**CASES**

*Abbott Redmont Thinlite Corp. v. Redmont,*
475 F.2d 85 (2d Cir. 1973)........................................................................18

*Alexander & Alexander of New York, Inc. v. Fritzen,*
147 A.D.2d 241, 542 N.Y.S.2d 530 (N.Y. App. Div. 1989)...........................24

*Boxer v. Husky Oil Co.,*
429 A.2d 995 (Del. Ch. 1981).....................................................................9

*Broz v. Cellular Info. Sys., Inc.,*
673 A.2d 148 (Del. 1996)............................................... 10, 11, 13, 22

*Canion v. Texas Cycle Supply, Inc.,*
537 S.W.2d 510 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.)................15

*Cede & Co. v. Technicolor, Inc.,*
634 A.2d 345 (Del. 1993).............................................................................8

*CST, Inc. v. Mark,*
520 A.2d 469 (Pa. Super. Ct. 1987)...........................................................25

*Duane Jones Co. v. Burke,*
306 N.Y. 172, 117 N.E.2d 237 (1954) ........................................................19

*Durfee v. Durfee & Canning,*
323 Mass. 187, 80 N.E.2d 522 (1948) ........................................................19

*Dweck v. Nasser,*
2012 WL 161590 (Del. Ch. Jan. 18, 2012).................................................13

*Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.,*
779 S.W.2d 474 (Tex. App.—El Paso 1989, writ denied)............................12

*Elec. Dev. Co. v. Robson,*
28 N.W.2d 130 (Neb. 1947) .......................................................................25

*Equity Corp. v. Milton*,
   221 A.2d 494 (Del. 1966)......................................................................11

*Gen. Video Corp. v. Kertesz*,
   No. 1922-VCL, 2008 WL 5247120 (Del. Ch. Dec. 17, 2008)...........................22

*Gottlieb v. McKee*,
   107 A.2d 240 (Del. Ch. 1954)................................................................17

*Grove v. Brown*,
   No. 6793-VCG, 2013 WL 4041495 (Del. Ch. Aug. 8, 2013)...........................15

*Guth v. Loft*,
   5 A.2d 503 (Del. 1939).................................................................. passim

*Harmony Way Bridge Co. v. Leathers*,
   353 Ill. 378, 187 N.E. 432 (1933).............................................................20

*Hollinger Intern., Inc. v. Black*,
   844 A.2d 1022 (Del. Ch. 2004)...............................................................13

*Imperial Group (Texas), Inc. v. Scholnick*,
   709 S.W.2d 358 (Tex. App.—Tyler 1986, writ ref'd n.r.e.)..................... 12, 16

*In re Mobilactive Media, LLC*,
   No. 5725-VCP, 2013 WL 297950 (Del. Ch. Jan. 25, 2013).............................13

*Int'l Bankers Life Ins. Co. v. Holloway*,
   368 S.W.2d 567 (Tex. 1963) ..............................................................8, 12

*Irving Trust Co. v. Deutsch*,
   73 F.2d 121 (2d Cir. 1934)..................................................................... 23, 24

*Jasper v. Appalachian Gas Co.*,
   152 Ky. 68, 153 S.W. 50 (1913) ..............................................................19

*Johnson v. Peckham*,
   120 S.W.2d 786 (Tex. 1938) ....................................................................9

*Johnston v. Greene*,
121 A.2d 919 (Del. 1956).......................................................................... 15, 16

*Kerrigan v. Unity Sav. Ass'n*,
317 N.E.2d 39 (Ill. 1974)...................................................................................23

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
138 Tex. 565, 160 S.W.2d 509 (1942) ............................................................8

*Klinicki v. Lundgren*,
695 P.2d 906 (Or. 1985)...................................................................................24

*Lagarde v. Anniston Lime & Stone Co.*,
126 Ala. 496, 28 So. 199 (1900).....................................................................20

*Landon v. S & H Mktg. Group, Inc.*,
82 S.W.3d 666 (Tex. App.—Eastland 2002, no pet.)....................................21

*Lincoln Stores, Inc. v. Grant*,
309 Mass. 417, 34 N.E.2d 704 (1941)............................................................20

*Litwin v. Allen*,
25 N.Y.S.2d 667 (N.Y. Sup. Ct. 1940).............................................................19

*Meinhard v. Salmaon*,
249 N.Y. 458, 164 N.E. 545 (1928)...................................................................9

*News-Journal Corp. v. Gore*,
147 Fla. 217, 2 So. 2d 741 (1941) ..................................................................20

*Nicholson v. Evans*,
642 P.2d 727 (Utah 1982).................................................................................25

*Norman v. Elkin*,
617 F. Supp. 2d 303 (D. Del. 2009) ...............................................................22

*Northeast Harbor Golf Club, Inc. v. Harris*,
661 A.2d 1146 (Me. 1995) ...............................................................................24

*Paulman v. Kritzer*,
   219 N.E.2d 541 (Ill. App. Ct. 1966) ...............................................25

*PJ Acquisition Corp. v. Skoglund*,
   453 N.W.2d 1 (Minn. 1990) ...........................................................21

*Plas-Tex, Inc. v. Jones*,
   No. 03-99-00286-CV, 2000 WL 632677
   (Tex. App.—Austin May 18, 2000, pet. denied) ...........................25

*Rosenblum v. Judson Eng'g Corp.*,
   99 N.H. 267, 109 A.2d 558 (1954) .................................................19

*Schildberg Rock Products Co. v. Brooks*,
   140 N.W.2d 132 (Iowa 1966) .........................................................18

*Southeast Consultants, Inc. v. McCrary Eng'g Corp.*,
   273 S.E.2d 112 (Ga. 1980) .............................................................18

*Winger v. Chicago City Bank & Trust Co.*,
   394 Ill. 94, 67 N.E.2d 265 (1946) ..................................................10

*Yiannatsis v. Stephanis by Sterianou*,
   653 A.2d 275 (Del. 1995).................................................................22

*Young v. Columbia Oil Co.*,
   110 W. Va. 364, 158 S.E. 678 (1931)..............................................20

## RULES

TEX. R. APP. P. 6.3...............................................................................29

TEX. R. APP. P. 9.4...............................................................................28

TEX. R. APP. P. 9.5...............................................................................29

TEX. R. APP. P. 9.5(e) ..........................................................................28

TEX. R. APP. P. 25.1(e) ........................................................................29

## IDENTITY AND INTEREST OF AMICUS CURIAE

EnerQuest Oil & Gas, Ltd. ("EnerQuest") is a Texas limited partnership which, since its formation in 2001, has been engaged in the business of investing in oil and gas assets both within and outside of Texas. EnerQuest currently invests in companies, such as Longview Energy Company ("Longview Energy"),[1] which are engaged in the exploration and production of oil and gas. Such companies are commonly referred to as Exploration and Production Companies (or "E&P Companies"), and they are essentially engaged in the exploration, acquisition, development, exploitation, production, and sale of crude oil and natural gas. This case involves Longview Energy's efforts as an E&P Company in the Eagle Ford Shale, the "shale play" which is the subject of this case.

EnerQuest is interested in this case, and submits this amicus curiae brief, because of important issues concerning how directors and officers in an E&P Company should define "*corporate opportunities*" and, in doing so,

---

[1] EnerQuest holds a 1.109% interest in Longview Energy. An affiliated entity, Hexagon Interim Partners, Ltd. ("Hexagon"), holds a similar interest. Robert W. Floyd and Timothy M. Dunn, both of Midland, Texas, are interest holders in EnerQuest. Mr. Dunn and members of his family are interest holders in Hexagon.

1

delineate prohibited conduct in light of their heightened duties of loyalty as fiduciaries. In this current case, Appellants, William R. "Bill" Huff ("Huff") and Rick D'Angelo ("D'Angelo"), seek to shed liability for their disloyalty to Longview Energy, as found by the jury, by advocating narrowly defined fiduciary duties based upon a rigidly defined area of geographic interest. In doing so, Huff and D'Angelo seek to narrow the definition of what constitutes a "corporate opportunity" under pertinent legal principles and Delaware law to justify their seizure of leasehold interests which were the legitimate business opportunities of Longview Energy. Their proposed limitations ignore the realities of the E&P industry and "shale plays" – such as the Eagle Ford Shale – including how oil and gas prospects are identified and explored, how leasehold acreage is secured, and how oil and gas reserves are economically developed. Appellants seek to excuse their disloyalties, as determined by the jury, by "watering down" the types of oil and gas opportunities that trigger duties of loyalty and trust.

E&P Companies, such as Longview Energy, incur substantial risks when investing time, expertise, and money in researching, identifying, and acquiring oil and gas prospects. The modern E&P company, such as Longview Energy, typically identifies generally large geographic areas – in this case, a large "shale play" covering almost 20,000 square miles – that may hold prospective value. They then develop strategies to lease acreage within this area to secure a foothold for the commencement of drilling operations. Some wells are "exploratory" wells only. Importantly, there is seldom a single well program. Rather, in large plays, such as the Eagle Ford Shale, there will be multiple wells drilled under the aegis of multiple mineral leases over extended periods of time by the same E&P Company. Strategies regarding expansion of leasehold interests will be driven by well data because the goal is exploration and exploitation of a large "shale play" within a congruent formation or formations of hydrocarbons. Wells may be in adjacent acreage or even separated by leases held by others. Wells that are not economic may still yield important data that will lead the E&P Company to explore other acreage or formations in the general, and often

times larger area tied to the primary relevant geologic formation. Similarly, a successful economic well will likely drive additional investment decisions about the opportunities presented by other leased or unleased acreage within the same "shale play." No rigid line should be drawn about what is included in an area of interest that is part of a "shale play," such as the Eagle Ford. Rather, the notion of "corporate opportunity" should be broadly, and not narrowly defined. Otherwise, investments of an E&P Company in such a "shale play" will be outweighed by the risks.

The E&P industry is fraught with risk, and such risks are without reward (or worse, without purpose) if fiduciaries are permitted to excuse usurpation of exploration opportunities by expediently (and retrospectively) redefining areas of geologic and/or geographic areas of interest. Thus, EnerQuest seeks to call to the Court's attention the importance of upholding the highest ethical standards that must define the crux of fiduciary relationships within the context of the E&P industry. A reversal of the current judgment against Huff and D'Angelo will have a

4

substantial negative effect upon the E&P industry because fiduciary disloyalty will be encouraged, not discouraged.

EnerQuest has paid the fees incurred in the preparation of this amicus curiae brief.

## STATEMENT OF CASE

EnerQuest adopts the Statement of the Case of Appellee Longview Energy to the extent such statement is applicable to the arguments discussed herein. (Brief of Appellee at p. xxiii.)

## ISSUES PRESENTED

EnerQuest adopts the Statement of Issues, in particular issues (1) and (2), of Appellee Longview Energy to the extent the arguments discussed herein are limited to aspects of those issues. (Brief of Appellee at p. xxiv.)

## STATEMENT OF FACTS

EnerQuest adopts the Statement of Facts of Appellee Longview Energy to the extent such facts are applicable to the arguments discussed herein. (Brief of Appellee at pp. 1-25.)

5

## SUMMARY OF ARGUMENT

Companies involved in E&P activities are dynamic, and a number of factors influence these dynamics (and investment returns compared to risk), including economies, innovation, efficiencies, and diversification of development opportunities. Talent, know-how, time, and money go into the identification of geographic and geologic areas holding prospective value or interest for exploration and development. And, an essential tool for protecting these proprietary opportunities are the fiduciary duties (in particular, the duty of loyalty) owed by directors and officers of the E&P Company to the E&P Company itself. Unless strictly governed by fiduciary principles, a fiduciary's pursuit of development opportunities that fall within an area of geologic interest of an E&P Company will play havoc with the ability to explore and develop mineral interests without fear that directors or officers will seize legitimate corporate opportunities.

Here, as directors who were privy to the plans of Longview Energy, Huff and D'Angelo undeniably owed duties of utmost loyalty to Longview Energy. And, contrary to their suggestions, corporate fiduciaries should

6

not be indulged in efforts to "water down" the notion of what constitutes a "corporate opportunity," and thereby introduce ambiguity into the enforcement of their duties. Rather, the notion of corporate opportunity should be broadly applied in the E&P industry given the characteristics of the E&P industry itself and the risks that E&P Companies face daily. Indeed, any narrow application will invite gamesmanship and expedience, and will encourage disloyalty. Fine lines will be drawn to facilitate self-dealing and expedience, but not fairness. Based on the record and the jury's verdict, Huff and D'Angelo placed themselves in a position where their self-interests conflicted with their duties to Longview Energy, and they chose to promote this self-interest in derogation of the best interests of Longview Energy.

EnerQuest respectfully asks this Court to affirm the trial court's judgment, and avoid entering any decision that weakens the protections which the "*corporate opportunity*" doctrine, as applied under Delaware law, was intended to provide to companies, such as Longview Energy.

## ARGUMENT

**1.    Since directors and officers are uniquely privy to business opportunities that could easily be exploited, fiduciary duties owed by the directors and officers, such as duty of loyalty, must be strictly enforced.**

At the core of fiduciary law are common sense principles aimed to foster and encourage loyalty and trust. Delaware law, which applies to this case, is substantially akin to Texas law in its clear mandate that directors and officers owe fiduciary duties of care, loyalty, and good faith to their company and should protect the company from self-interested conduct. *See Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 512-13 (1942); *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963) (as a fiduciary, a director owes a duty to further the interest of the corporation and to give it the benefit of uncorrupted business judgment). As aptly stated by Justice Benjamin Cardozo:

> [T]hose bound by fiduciary ties … [are] held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

8

*Johnson v. Peckham*, 120 S.W.2d 786, 788 (Tex. 1938) (quoting *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928)); *see Boxer v. Husky Oil Co.*, 429 A.2d 995, 997 (Del. Ch. 1981) (citing *Meinhard*).

In *Guth v. Loft*, the Supreme Court of Delaware emphasized the importance of these fiduciary duties:

> A public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty … [in order] to protect the interest of the corporation committed to his charge … [and] requires an undivided and unselfish loyalty to the corporation demands that there shall be no conflict between duty and self-interest.

*Guth*, 5 A.2d 503 at 510. And, because directors and officers are uniquely privy to business opportunities that could easily be exploited, courts universally emphasize the importance of strictly enforcing these fiduciary duties:

> Nothing less than incapacity is able to shut the door to temptation, where the danger is imminent and security against discovery is great. The wise policy of the law has therefore put the sting of disability into the temptation, as a defensive weapon against

9

the strength of the danger which lies in the situation.

*Winger v. Chicago City Bank & Trust Co.*, 394 Ill. 94, 116, 67 N.E.2d 265, 279 (1946).

Delaware jurisprudence also favors certainty and predictability in the context of fiduciary law. *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 159 (Del. 1996). The so-called corporate opportunity doctrine attempts to define the boundaries of these duties where a director or officer may be tempted to seize a business opportunity in derogation of the rights of the company whose interests the fiduciary is bound to protect.

**2.    To excuse conduct in breach of the fiduciary duty of loyalty would weaken the fundamental purpose of the corporate opportunity doctrine to the point that the doctrine may not effectively deter a fiduciary from personally developing corporate opportunities.**

Under Delaware law, "[t]he doctrine of corporate opportunity represents but one species of the broad fiduciary duties assumed by a corporate director or officer." *Broz*, 673 A.2d at 154. The corporate opportunity doctrine is implicated when the corporate director or officer takes an opportunity that results in a conflict between the fiduciary duties

of the director or officer to the company and the self-interest of the director or officer. *Id.* at 157. Therefore, the central purpose of the doctrine is to *stop* corporate directors or officers from misappropriating opportunities to which the company has a superior right—that is, *stop* usurpation of corporate opportunities. The basic question in all usurpation cases is whether the director has appropriated something that, in all fairness, should belong to the corporation. *Equity Corp. v. Milton*, 221 A.2d 494, 497 (Del. 1966).

The seminal case on establishing the existence of a corporate opportunity under Delaware law, and most other jurisdictions, is *Guth v. Loft*. In *Guth*, the Supreme Court of Delaware held that a corporate director or officer is not permitted, as a matter of law, to seize a corporate opportunity:

> [I]f there is presented to a corporate officer or director a business opportunity which the corporation is financially able to undertake, is, from its nature, in the line of the corporation's business and is of practical advantage to it, is one in which the corporation has an interest or a reasonable expectancy, and by embracing the opportunity, the

11

self-interest of the officer or director will be brought into conflict with that of his corporation ….

*Guth*, 5 A.2d 503 at 511; *see Holloway*, 368 S.W.2d at 576-78; *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 477 (Tex. App.—El Paso 1989, writ denied). Thus, the Delaware Supreme Court laid out three principal factors to consider in evaluating a corporate opportunity issue: (1) whether or not the corporation has the financial ability to undertake the opportunity; (2) whether or not the opportunity is in the corporation's line of business and is of practical advantage to it; and, (3) whether or not the corporation has an interest or reasonable expectancy in the opportunity. *Guth*, 5 A.2d 503 at 511.

The corporate opportunity doctrine is a judicially-designed means to test the conduct of a director or officer when weighed and measured in the context of the duties of utmost good faith and loyalty. *See Imperial Group (Texas), Inc. v. Scholnick*, 709 S.W.2d 358, 363 (Tex. App.—Tyler 1986, writ ref'd n.r.e.) (citing *Guth*, 5 A.2d at 510)). Therefore, and arguably most importantly, whether a corporate opportunity exists "is not one to be decided on narrow or technical grounds, but upon broad considerations of

12

corporate duty and loyalty." *Guth*, 5 A.2d at 511; *see In re Mobilactive Media, LLC*, No. 5725-VCP, 2013 WL 297950, at \*21-22 (Del. Ch. Jan. 25, 2013) (citing *Dweck v. Nasser*, 2012 WL 161590, at \*13 (Del. Ch. Jan. 18, 2012)). No single factor determines when a corporate opportunity exists, and issues of fairness are central to the analysis. *Broz*, 673 A.2d at 155; *see also Hollinger Intern., Inc. v. Black*, 844 A.2d 1022, 1061-62 (Del. Ch. 2004).

The fiduciary duties owed by directors and officers to a company, in particular the duty of loyalty, mandates that the best interests of the company take precedence over any interest of the director or officer. Put differently, the duty of loyalty requires strict compliance and restraint from self-dealing. These duties are especially important in the E&P industry in light of the significant risks and investment, financially and otherwise, associated with an E&P Company's efforts to identify areas of prospective value or geologic interest, and then acquiring leasehold acreage for development.

As discussed above, E&P Companies, such as Longview Energy, typically identify generally large areas that may hold prospective value,

then they develop strategies to lease acreage within this area to secure a foothold for commencement of drilling operations. Thereafter, based on well data from drilling operations, E&P Companies implement strategies regarding expansion of leasehold interests to explore and exploit the large "shale play" in an efficient and economical manner. The E&P Company has a clear "interest or reasonable expectancy" in the opportunity to fully exploit a "shale play." Clearly, the expansion of leasehold interests within a "shale play" is, under the three-pronged *Guth* test, consistent with an E&P Company's "line of business" and provides significant "practical advantage."

Here, based on the record, Huff and D'Angelo engaged in conduct that directly conflicted with their responsibilities to Longview Energy. To excuse their conduct (whether shown to be minor, moderate, or severe) will weaken the fundamental purpose of the corporate opportunity doctrine to the point that the doctrine *may* not effectively deter a fiduciary from personally developing corporate opportunities.

**3.** **The "interest and expectancy" test should not be applied narrowly, but rather broadly, in the unique circumstances of the oil and gas industry so as not to create a dangerous exception to the duty of loyalty that fosters, rather than prohibits, disloyalty of directors and officers.**

One of the "traditional" factors required to establish the existence of a corporate opportunity, as promulgated in *Guth*, is whether "the corporation has an interest or a reasonable expectancy" in the business opportunity. *Guth*, 5 A.2d 503 at 511; *see Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex. Civ. App.—Austin 1976, writ ref'd n.r.e.). "[F]or a corporation to have an expectant interest in any specific property, 'there must be some tie between the property and the nature of the corporate business.'" *Grove v. Brown*, No. 6793-VCG, 2013 WL 4041495, at *8 (Del. Ch. Aug. 8, 2013) (quoting *Johnston v. Greene*, 121 A.2d 919, 924 (Del. 1956)). An opportunity is said to be in the corporation's line of business where the opportunity embraces "an activity as to which [the corporation] has fundamental knowledge, practical experience and ability to pursue, which, logically and naturally, is adaptable to its business, and . . . consonant with

15

its reasonable needs and aspirations for expansion." *Id*. (quoting *Guth*, 5 A.2d at 512); *see Scholnick*, 709 S.W.2d at 365 (citing *Guth,* 5 A.2d 503).

It should be beyond credible dispute that E&P Companies, such as Longview Energy, invest significant time and financial resources into the research and discovery of potentially feasible prospects across expansive geographic and geologic areas. Such Companies must first find before they can mine. It may take several wells, some of which may be uneconomical or marginally economical, on several leases before a formation is fully defined, and a prospect is fully exploited by the E&P Company. Again, there is a reasonable expectancy that E&P Companies have (and should have) that its exploration and development strategies will be free from directors and officers who unilaterally determine to seize exploration and development opportunities for themselves.

Thus, one of the most effective tools available to an E&P Company for protecting valuable research and evaluations concerning oil and gas prospects is the duty of loyalty of those who have gained access to the E&P Company's intentions or strategies, and the valuable data supporting those

16

intentions and strategies. If fiduciaries are not strictly discouraged from personally capitalizing on such strategies and supporting data, then what was highly valuable to the E&P Company and those that financially invest in such Companies (except those that decide to usurp the strategies and data), becomes practically worthless.

Huff and D'Angelo appear to rely upon an antiquated "present interest" rule illustrated in the *Colorado & Utah Coal Co. v. Harris* opinion for the proposition that Longview Energy has no "practical, not a mere theoretical, basis for the opportunity" across such a "vast" area. (Brief of Appellants Huff and D'Angelo at pp. 31-32); *see, e.g., Guth*, 5 A.2d 503 and *Gottlieb v. McKee*, 107 A.2d 240 (Del. Ch. 1954). The court in the 80 year old *Colorado & Utah Coal* opinion summarily found that a company had no expectancy in the opportunity to purchase a particular piece of land contained in "vast" coal deposits because it may create a "virtual monopoly" in the opportunity. However, Huff and D'Angelo's reliance on this outdated opinion implicitly asks this Court to *ignore* the unique opportunities that arise for an E&P Company in significant "shale plays"

17

from informed (and highly valuable) research and analysis of the oil and gas prospects. Huff and D'Angelo seek to *create* a dangerous exception to the duty of loyalty that fosters, rather than prohibits, disloyalty.

Again, directors and officers, such as Huff and D'Angelo, have a fiduciary duty *not* to engage in activities that directly compete with and have potentially detrimental effect upon Longview Energy's business. Huff and D'Angelo *cannot* be disloyal to the interests and welfare of Longview Energy, and the *Colorado & Utah Coal* opinion does not (and should not) change that conclusion. *See Abbott Redmont Thinlite Corp. v. Redmont*, 475 F.2d 85, 88-89 (2d Cir. 1973) (finding company had tangible expectancy in multiple potential projects for which its former officer had written product specifications and prepared bids); *Southeast Consultants, Inc. v. McCrary Eng'g Corp.*, 273 S.E.2d 112, 116-18 (Ga. 1980) (finding prospective city planning project in which former officer had prepared preliminary study before the project was financed was a corporate opportunity); *Schildberg Rock Products Co. v. Brooks*, 140 N.W.2d 132, 137-38 (Iowa 1966) (finding company had interest and reasonable expectancy in prospective limestone

quarry which it had previously explored for economic feasibility and quality of limestone); *Durfee v. Durfee & Canning*, 323 Mass. 187, 198-99, 80 N.E.2d 522, 528-29 (1948) (citing *Guth*, 5 A.2d at 510, and *Jasper v. Appalachian Gas Co.*, 152 Ky. 68, 79, 153 S.W. 50, 55 (1913)) (it is "inveterate and uncompromising in its rigidity" based on "wise public policy" that "one in 'a position of trust in the management and conduct of the affairs of a corporation … owes to said corporation the duty … of refraining from doing anything whatever that would injuriously affect said corporation"); *Rosenblum v. Judson Eng'g Corp.*, 99 N.H. 267, 271-73, 109 A.2d 558, 562-63 (1954) (finding unfaithful directors may be found liable despite absence of company's present interest or expectancy in opportunity); *Duane Jones Co. v. Burke*, 306 N.Y. 172, 187-89, 117 N.E.2d 237, 245 (1954) (finding former directors and officers violated fiduciary duty by engaging in conduct to acquire multiple accounts that "resulted in benefit to themselves through destruction of" the business they owed the fiduciary duties); *Litwin v. Allen*, 25 N.Y.S.2d 667, 685-86 (N.Y. Sup. Ct. 1940) (right or expectancy may arise from fact that directors had undertaken to negotiate in the field at issue);

*Young v. Columbia Oil Co.*, 110 W. Va. 364, 158 S.E. 678 (1931) (finding directors of oil and gas company that purchased land on their own behalves without notifying company of the opportunity breached their fiduciary duty despite purchase being potentially "impractical" for company).

In addition, courts have upheld a company's expectancy interest in a corporate opportunity if the company is in substantial need of the opportunity. *See Lagarde v. Anniston Lime & Stone Co.*, 126 Ala. 496, 502, 28 So. 199, 201 (1900) (director or officer may not pursue opportunity if it "will in some degree balk the corporation in effecting the purposes of its creation"); *News-Journal Corp. v. Gore*, 147 Fla. 217, 223, 2 So. 2d 741, 744 (1941) (director breached fiduciary duty by purchasing and increasing rent on land that company leased for its equipment and office); *Harmony Way Bridge Co. v. Leathers*, 353 Ill. 378, 395, 187 N.E. 432, 439 (1933) ("corporate director who purchases property which he knows the corporation will need, and then sells the same to the corporation at an advanced price, abuses the trust reported in him"); *Lincoln Stores, Inc. v. Grant*, 309 Mass.

20

417, 421, 34 N.E.2d 704, 707 (1941) ("director cannot be allowed to profit personally by acquiring property that he knows the corporation will need or intends to acquire"); *PJ Acquisition Corp. v. Skoglund*, 453 N.W.2d 1, 8-9 (Minn. 1990) (acknowledging general rule that corporate "necessity" may be considered to determine corporate opportunity); *Landon v. S & H Mktg. Group, Inc.*, 82 S.W.3d 666, 681 (Tex. App.—Eastland 2002, no pet.) (finding opportunity to improve company's financial condition clearly constitutes a business opportunity).

Here, assuming that Longview Energy was financially distressed for argument purposes, it can hardly be disputed that Longview Energy would be in substantial need of the corporate opportunity it identified in the Eagle Ford Shale that was later usurped by Huff and D'Angelo. Also, without a doubt, investment companies, such EnerQuest, would be substantially less likely to invest in an E&P Company, such as Longview Energy, if they knew that the directors and officers of the E&P Company, such as Huff and D'Angelo, do not have strict disincentives from taking proprietary information and seizing production opportunities of the E&P

21

Company. Accordingly, to accept Huff and D'Angelo's lax interpretation of the "interest or expectancy test" promulgated in *Guth* would foster, not frustrate, fiduciary disloyalty.

**4.    It would be imprudent to permit directors and officers to exploit corporate opportunities based on their company's *purported* financial inability short of actual insolvency.**

Another focus of the corporate opportunity doctrine is whether "the corporation is financially able to undertake" the opportunity. *Guth*, 5 A.2d 503 at 511; *Broz*, 673 A.2d at 155 (permitting limited defense of financial inability under the corporate opportunity doctrine). Delaware courts recognize the policy concerns implicated by the financially inability defense: a director or officer is less likely to fulfill duties of loyalty to improve the business' financial condition to permit it to exploit a business opportunity if the business is financially distressed. *Norman v. Elkin*, 617 F. Supp. 2d 303, 312 (D. Del. 2009) (citing *Gen. Video Corp. v. Kertesz*, No. 1922-VCL, 2008 WL 5247120, at *19 (Del. Ch. Dec. 17, 2008) (finding financial inability must amount to insolvency such that the company is practically defunct)); *Yiannatsis v. Stephanis by Sterianou*, 653 A.2d 275, 279 (Del. 1995)

22

(flexible standard applies to the consideration of whether the corporation was financially able to undertake the opportunity).

Here, it would be imprudent to permit directors and officers, such as Huff and D'Angelo, to exploit opportunities based on their company's purported financial inability short of actual insolvency. *See Irving Trust Co. v. Deutsch*, 73 F.2d 121, 124 (2d Cir. 1934), *cert. denied*, 55 S. Ct. 405 (1935) ("[u]ncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions.") Indeed, it would incentivize, and not discourage, disloyalty, especially if the opportunity may later be more valuable or coveted by a competitor. Again, courts recognize the inevitable consequences of a lax standard, including the disincentive a director or officer would have to solve corporate financing and other problems facing the corporation. *See Irving Trust Co.*, 73 F.2d at 124 ("If directors are permitted to justify their conduct on [a financial inability] theory, there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the

23

obligation, an opportunity of profit will be open to the them personally.");

*Kerrigan v. Unity Sav. Ass'n*, 317 N.E.2d 39, 44 (Ill. 1974) (relying on *Irving Trust* in finding the directors "were actively exploiting their position as directors … for their personal benefit"); *Northeast Harbor Golf Club, Inc. v. Harris*, 661 A.2d 1146, 1149 (Me. 1995) ("the injection of financial inability into the equation will unduly favor the inside director or executive" and "will also act as a disincentive to corporate executives to solve corporate financing and other problems"); *Alexander & Alexander of New York, Inc. v. Fritzen*, 147 A.D.2d 241, 247-49, 542 N.Y.S.2d 530 (N.Y. App. Div. 1989) (permitting a dispositive inability defense would "reduce[ ] the incentive for executives to seek effective solutions to corporate problems," and would "encourage employees and fiduciaries to divert corporate opportunities knowing that the diversion may not be effectively challenged"); *Klinicki v. Lundgren*, 695 P.2d 906, 915-16 (Or. 1985).

Huff and D'Angelo are attempting to exploit a financial inability defense, without evidence of insolvency, to ask this Court to ignore the time and expense invested by Longview Energy in the research and

24

identification of development opportunities in the Eagle Ford Shale. Not surprisingly, courts have rejected (and should reject) the notion that fiduciaries, such as Huff and D'Angelo, may excuse unfaithful conduct because a company is *merely* distressed financially. *See Paulman v. Kritzer*, 219 N.E.2d 541, 547 (Ill. App. Ct. 1966) (finding contention that company was not financially able to seize the opportunity "not particularly compelling in view of its solvency"); *Elec. Dev. Co. v. Robson*, 28 N.W.2d 130, 138 (Neb. 1947) ("Financial inability, unless it amounts to insolvency to the point where the corporation is practically or actually defunct, is insufficient to warrant application of the [defense]."); *CST, Inc. v. Mark*, 520 A.2d 469, 472 (Pa. Super. Ct. 1987) (stating that there "was no evidence that [the corporation] was near insolvency or that it could not have produced the funds necessary" to exploit the opportunity); *Nicholson v. Evans*, 642 P.2d 727, 731 (Utah 1982) ("in most jurisdictions, corporate financial difficulty short of actual insolvency … is inadequate by itself to exonerate a fiduciary who appropriates an opportunity"); *see also Plas-Tex, Inc. v. Jones*, No. 03-99-00286-CV, 2000 WL 632677, at *6 (Tex. App.—Austin May 18,

25

2000, pet. denied) (finding no usurpation of corporate opportunity because company was "insolvent, [and] in default").

Accordingly, directors and officers should not be excused from conduct detrimental to the company because a company may be financially distressed. Instead, it is only when the company is insolvent that financial inability is so palpably clear that the law should allow a fiduciary to take what is otherwise a corporate opportunity. Based on the record, that is not the case here.

## **PRAYER**

For the foregoing reasons, EnerQuest Oil & Gas, Ltd. respectfully requests that this Court affirm the trial court's judgment.

Dated: May 29, 2015.

Respectfully submitted,

BEIRNE, MAYNARD & PARSONS, LLP

By: /s/ *David A. Walton*

Sawnie A. McEntire
Texas Bar No. 13590100
smcentire@bmpllp.com
David A. Walton
Texas Bar No. 24042120
dwalton@bmpllp.com
1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201
Tel. (214) 237-4300
Fax (214) 237-4340

Joseph M. Nixon
Texas Bar No. 15244800
jnixon@bmpllp.com
BEIRNE, MAYNARD & PARSONS, L.L.P.
1300 Post Oak Blvd., Suite 2500
Houston, Texas 77056
Tel. (713) 623-0887
Fax (713) 960-1527

*Attorneys for Amicus Curiae, EnerQuest Oil & Gas, Ltd.*

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

As required by Texas Rule of Appellate Procedure 9.4, I certify that:

1.    This amicus curiae brief complies with the type-volume limitation of TEX. R. APP. P. 9.4 because it contains 4,652 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4.

2.    This amicus curiae brief complies with the typeface requirements of TEX. R. APP. P. 9.5(e) because it has been prepared in a proportionally spaced typeface using Microsoft Work 2010 in 14 point Palatino Linotype font for the text and 12 point Palatino Linotype font for the footnotes.

/s/ *David A. Walton*
David A. Walton

## CERTIFICATE OF SERVICE

As required by Texas Rules of Appellate Procedure 6.3, 9.5, and 25.1(e), I certify that I have served this document on all other parties—which are listed below—on May 29, 2015, by fax or e-service.

Thomas R. Phillips
Matt C. Wood
BAKER BOTTS LLP
1500 San Jacinto Center
98 San Jacinto Blvd.
Austin, Texas 78701

Daryl L. Moore
DARYL L. MOORE PC
1005 Heights Boulevard
Houston, Texas 77008

Dean V. Fleming
Michael W. O'Donnell
Jeffrey A. Webb
FULBRIGHT & JAWORSKI LLP
300 Convent Street, Suite 2100
San Antonio, Texas 78205

Sharon E. Callaway
CROFTS & CALLAWAY PC
300 Austin Highway, Suite 120
San Antonio, Texas 78209

Louis M. Solomon
Hal S. Shaftel
Solomon B. Shinerock
CADWALADER WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281

Ricardo R. Reyna
BROCK PERSON GUERRA REYNA PC
17339 Redland Road
San Antonio, Texas 78247-2302

Alfredo Z. Padilla
LAW OFFICE OF ALFREDO Z. PADILLA
104 N. 5th Street
Carrizo Springs, Texas 78834

Pamela Stanton Baron
P. O. Box 5573
Austin, Texas 78763

*/s/ David A. Walton*
David A. Walton